(869 P.2d 755)
No. 69,252

STATE OF KANSAS, *Appellee*, v. JUAN RIOS, *Appellant*.

351

Opinion filed March 4, 1994.

*Phyllis F. Wendler*, of Friesen & Wendler, P.A., of Garden City, for appellant.

*John Shirley*, county attorney, and *Robert T. Stephan*, attorney general, for appellee.

Before ROYSE, P.J., GREEN, J., and DAVID W. KENNEDY, District Judge, assigned.

ROYSE, J.: Juan Rios appeals his convictions by a jury of one count of possession of marijuana with intent to sell, K.S.A. 65-4127b, and one count of possession of marijuana without a tax stamp, K.S.A. 79-5208. Rios claims that there was insufficient evidence introduced at trial to support a guilty verdict and that he was denied a fair trial because the court-appointed interpreter was unqualified to perform her duties.

The State argues that this court lacks jurisdiction to consider the merits of Rios' appeal. The State contends the appeal is premature because it was filed prior to Rios' sentencing. Rios responds that the appeal is pursuant to Supreme Court Rule 2.03 (1993 Kan. Ct. R. Annot. 7).

It is well established that "[t]he right to appeal is neither a vested nor constitutional right, but is strictly statutory in nature." *State v. McDaniels*, 237 Kan. 767, Syl. ¶ 1, 703 P.2d 789 (1985). When the record discloses a lack of jurisdiction, it is the duty of the court to dismiss the appeal. *State v. Leopard*, 191 Kan. 581, 582, 382 P.2d 330 (1963).

K.S.A. 22-3602(a) provides in part:

"Except as otherwise provided, an appeal to the appellate court having jurisdiction of the appeal may be taken by the defendant as a matter of right from any judgment against the defendant in the district court and upon appeal any decision of the district court or intermediate order made in the progress of the case may be reviewed."

For purposes of K.S.A. 22-3602(a), "judgment" requires both a conviction and a sentence. In *State v. Rucas*, 12 Kan. App. 2d 68, 72, 734 P.2d 673 (1987), this court stated that "[i]n Kansas there is no 'final judgment in the case' from which an appeal can be taken until there has been both conviction and sentencing, or suspension of sentence." In *City of Topeka v. Martin*, 3 Kan. App. 2d 105, 590 P.2d 106 (1979), this court dismissed an appeal which was filed prior to sentencing because "[a]n order finding a defendant guilty is not an appealable order." Recently in *State v. Wilson*, 15 Kan. App. 2d 308, 310, 808 P.2d 434 (1991), this court reaffirmed the fact that "[t]he judgment in a criminal case becomes effective, and the time period for appeal starts running, when the defendant's sentence is pronounced from the bench."

The record in this case is straightforward. Rios was found guilty by a jury, and his post-trial motions were heard on December 1, 1992. His notice of appeal was filed on December 29, 1992. The district court imposed sentence on January 5, 1993. Thus, there was no "final judgment in the case" when Rios filed his notice of appeal. Rios' reliance on Rule 2.03 is misplaced. That rule provides:

"A notice of appeal filed subsequent to an announcement by the judge of the district court on a judgment to be entered, but prior to the actual entry of judgment as provided in K.S.A. 60-258, shall be effective as notice of appeal under K.S.A 60-2103 if it identifies the judgment or part thereof from which the appeal is taken with sufficient certainty to inform all parties of the rulings to be reviewed on appeal. Such advance filing shall have the same effect for purposes of the appeal as if the notice of appeal had been filed simultaneously with the actual entry of judgment, provided it complies with K.S.A. 60-2103(b)."

Under Rule 2.03, a premature notice of appeal from a judgment lies dormant until the judgment is duly entered. See *State v. Bohannon*, 3 Kan. App. 2d 448, 451, 596 P.2d 190 (1979). Because a finding of guilty is not a judgment, Rule 2.03 has no application here.

This court has also considered *State v. Ortiz*, 230 Kan. 733, 640 P.2d 1255 (1982). In *Ortiz*, the Supreme Court recognized an exception to the general rule that an appeal filed out of time must be dismissed.

"An exception to the general rules . . . has been recognized in the interest of fundamental fairness only in those cases where a defendant either was not informed of the rights to appeal or was not furnished an attorney to perfect an appeal or was furnished an attorney for that purpose who failed to perfect and complete an appeal." 230 Kan. 733, Syl. ¶ 3.

Presumably, the reason for allowing an exception when an attorney fails to perfect and complete an appeal is the belief that it is unfair to punish a defendant for the mistakes of his counsel. In this case, Rios clearly wanted to appeal his conviction, but his attorney mistakenly filed the notice of appeal before sentencing. Fundamental fairness would dictate that Rios not be penalized for the mistakes of his attorney.

In the *Ortiz* case, the Supreme Court found the exception did not apply and dismissed the appeal because the defendant had made a knowing and intelligent waiver of his right to appeal. Since *Ortiz*, however, the exception recognized in that case has been found to be applicable on a number of occasions. See *State v. McDaniel*, 249 Kan. 341, 345, 819 P.2d 1165 (1991); *State v. Mitchell*, 231 Kan. 144, 147, 642 P.2d 981 (1982); *State v. Irvin*, 16 Kan. App. 2d 214, 217, 821 P.2d 1019 (1991).

*Ortiz* and the cases which have applied the exception addressed the failure to file an appeal within 130 days of sentencing. This case, by contrast, concerns an appeal filed before sentencing. The basic rationale of fundamental fairness to the defendant would seem to be the same, however, whether an appeal is filed too early or too late.

In this case, the State did not raise the issue that Rios had failed to properly perfect his appeal. This court on its own motion raised the jurisdictional issue by issuing an order to show cause why the appeal should not be dismissed. The parties were later directed to address in their briefs the possible application of *Honeycutt v. City of Wichita*, 251 Kan. 451, 836 P.2d 1128 (1992).

*Honeycutt* involved a civil suit for personal injuries. The plaintiff appealed the summary dismissal of two of the four defendants before final judgment was granted as to the remaining defendants.

The Supreme Court noted that the summary judgments were not final judgments, 251 Kan. at 454, but refused to dismiss the appeal. The court held that a premature appeal from an interlocutory order which has not been dismissed is validated by the entry of a final judgment disposing of all claims in the case.

In arriving at its conclusion, the court pointed out in *Honeycutt* that: "[t]he purpose of requiring a final decision prior to an appeal is to prevent intermediate and piecemeal appeals that extend and prolong litigation and add to the cost of litigation." 251 Kan. at 459. The court, however, emphasized that "the judicial system should offer inexpensive and speedy justice to the citizens of this state and give a liberal construction to the statutes in order to insure that cases are decided on their merits and not to deny a party his or her day in court if the other party to the litigation has not been prejudiced." 251 Kan. at 461.

Despite the fact that *Honeycutt* differs from this case both factually and procedurally, the underlying rationale of the *Honeycutt* holding is just as compelling in a criminal appeal. By emphasizing the importance of deciding cases on their merits, the *Honeycutt* holding would seem to encourage application of the *Ortiz* exception in appeals filed too early as well as those filed too late. Certainly, the State makes no claim that it was prejudiced by the fact that Rios' appeal was filed too early. "The appellee will not be prejudiced because the appellee will know of the intent to appeal prior to final judgment and would be in the same position as if a notice of appeal had been filed after the final judgment." 251 Kan. at 462.

Based on *Honeycutt* and *Ortiz*, Rios was furnished an attorney who failed to properly perfect his appeal. Under the circumstances of this case, the interests of fundamental fairness dictate that Rios should not be penalized for the mistakes of his attorney. We will, accordingly, consider the merits of his appeal.

Rios' first argument on appeal is that there was insufficient evidence to support a guilty verdict. The parties agree that the evidence against Rios at trial was circumstantial in nature.

"When the sufficiency of circumstantial evidence is challenged in a criminal case, the standard of review on appeal is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant

guilty beyond a reasonable doubt." *State v. Clemons*, 251 Kan. 473, Syl. ¶ 5, 836 P.2d 1147 (1992).

Appellant contends that the State introduced no evidence at trial from which a reasonable juror could have inferred that Mr. Rios had possession of the marijuana. The State responds that all of the circumstantial evidence, taken together, was sufficient to convict Mr. Rios.

Mr. Rios was convicted of violating K.S.A. 65-4127b(b), which provides in part:

"Except as authorized by the uniform controlled substances act, it shall be unlawful for any person to sell, offer for sale or have in such person's possession with the intent to sell, cultivate, prescribe, administer, deliver, distribute, dispense or compound:

. . . .

(3) any hallucinogenic drug designated in subsection (d) of K.S.A. 65-4105, and amendments thereto or designated in subsection (g) of K.S.A. 65-4107 and amendments thereto."

Marijuana is designated as an hallucinogenic substance under K.S.A. 65-4105(d)(16).

In *State v. Faulkner*, 220 Kan. 153, 551 P.2d 1247 (1976), the Kansas Supreme Court held that when a defendant is charged with possession of a controlled substance with intent to sell, proof of possession is an essential element of the State's burden. The court defined "possession" as " '[h]aving control over a place or thing with knowledge of and the intent to have such control.' " 220 Kan. at 156 (citing *State v. Neal*, 215 Kan. 737, 529 P.2d 114 [1974]). The court stated that possession could be proved by circumstantial evidence alone. 220 Kan. at 160.

The evidence at trial was that Rios, a citizen of Mexico, has resided in Garden City, Kansas, with his wife for several years. Because Rios is an illegal alien, he has not maintained steady employment but has instead survived on a series of "unofficial" part-time jobs. Rios does not speak English.

Rios' codefendant at trial was Samson Aldaco, a friend from Garden City. In February of 1992, Aldaco borrowed a car from a former coworker named Joe Flores. Rios was present when Flores gave Aldaco the keys to the car. Aldaco testified that Flores later asked him to return the car by driving it to Hays the next weekend. Aldaco invited Rios to accompany him on the trip from

Garden City to Hays, telling him that they would not be gone very long. Rios agreed to go along on the trip to keep Aldaco company.

According to Aldaco, he drove the car to Hays while Rios sat in the passenger seat. At no time during the trip did Rios drive the car or take possession of its keys. When the two men arrived in Hays, they were unable to find Flores at their appointed meeting place. After spending the rest of the day looking for Flores without success, Aldaco says he rented a motel room for them under the assumed name of "Raphael Ramirez." Still unable to find Flores the next day, the two men finally decided to return to Garden City.

The car was stopped by police officer Robert Mitchell just outside of Scott City at about 8:30 in the evening. Mitchell testified that he stopped Aldaco's vehicle because he observed it weaving onto the shoulder of the road and crossing the center line. Aldaco testified that the officer told him that he was being stopped for driving too slow. Aldaco did not have a driver's license with him, and upon checking with state records the officer discovered that Aldaco's license had been suspended. Mitchell told Aldaco that he would have to go to jail for driving with a suspended license, and then he asked if the passenger, Rios, had a valid driver's license. Rios explained, with Aldaco as his interpreter, that he did not have a driver's license and could not drive a car.

At this point Mitchell told Aldaco that the car would have to be towed and asked Aldaco for permission to search the car. Aldaco took the keys out of the ignition and handed them to Rios, telling him in Spanish to open the trunk because the policeman wanted to look inside. Rios walked to the back of the car and opened the trunk.

Mitchell found two gym bags in the trunk: a blue one containing various articles of clothing and Joe Flores' birth certificate, and a black one containing approximately 17 pounds of marijuana. The officer asked Rios, through Aldaco, if he knew what was in the black bag. Rios did not speak but instead gestured with his hands elevated at his sides, palms up, and with a mystified look on his face. A subsequent search of the entire car turned up a road map of Colorado, a knife that was down behind the back

seat, a registration receipt for the car made out to "Larry Mendez," and other documents.

By the time a second police officer, Jeff Pounds, arrived on the scene, Rios and Aldaco were handcuffed and sitting in the back of Mitchell's patrol car. Pounds looked at the two men and observed Aldaco trying to reach around into his right front pocket. The police searched Aldaco and found $1,000 in cash in that pocket.

In cases such as the one at hand where a defendant was in nonexclusive possession of the premises on which drugs were found, Kansas courts have consistently held that possession of the drugs could not be inferred absent other incriminating circumstances linking the defendant to the drugs. *State v. Cruz*, 15 Kan. App. 2d 476, Syl. ¶ 11, 809 P.2d 1233, *rev. denied* 249 Kan. 777 (1991); *State v. Bullocks*, 2 Kan. App. 2d 48, Syl. ¶ 2, 574 P.2d 243, *rev. denied* 225 Kan. 846 (1978).

In *Faulkner*, which involved the discovery of drugs in a car with more than one occupant, the court set forth what circumstances might be considered sufficiently incriminating to prove possession of the drugs. The court observed:

"[W]hen illicit drugs are found in an automobile containing more than one person, the defendant's mere presence in the vehicle, without more, would not sustain his conviction for possession. Other circumstances which have been held sufficiently incriminating to link a defendant with illicit drugs in a vehicle are his previous participation in the sale of drugs, his use of narcotics, his proximity to the area where drugs are found and the fact the drugs were found in plain view. While none of these circumstances, by itself, may be sufficient to support a conviction, taken together they provide a sufficient inference of knowing possession to support the verdict." 220 Kan. at 160.

The *Faulkner* decision contains a citation to Annot., Conviction of Possession of Illicit Drugs Found in Automobile of which Defendant was not Sole Occupant, 57 A.L.R.3d 1319. The annotation provides a list of factors that may be considered when determining whether a defendant possessed illegal drugs: (1) incriminating statements made by defendant; (2) suspicious behavior on the part of the defendant; (3) previous drug sales by defendant; (4) defendant's use of narcotics; (5) proximity of defendant to the area where drugs were found; (6) drugs found in plain sight; and

(7) other drugs or paraphernalia found on defendant. 57 A.L.R.3d at 1323-24.

In *State v. Flinchpaugh*, 232 Kan. 831, 835, 659 P.2d 208 (1983), the court stated that knowledge was an essential ingredient of illegal possession of a controlled substance and that a defendant must know of the presence of the controlled substance before he can be convicted. See *State v. Justice*, 10 Kan. App. 2d 569, 577, 704 P.2d 1012 (1985). *Flinchpaugh* held that "[t]he intent to possess, to appropriate the drug to oneself, constitutes the requisite mental attitude for conviction of possession." 232 Kan. at 835. However, possession need not be exclusive and immediate but rather can be "jointly held with another, or constructive as where the drug is kept by the accused in a place to which he has some measure of access and right of control." *Bullocks*, 2 Kan. App. 2d at 49-50.

Recently, in *State v. Cruz*, 15 Kan. App. 2d at 476, this court reversed the convictions of two defendants found guilty of possession with intent to sell cocaine, due to insufficiency of the evidence. Although *Cruz* did not concern drugs found in a vehicle, the convictions did rest upon circumstantial evidence of joint, constructive possession of an illegal substance. In *Cruz*, a police officer was questioning two men about their presence in a vacant house when one of the men went down to the basement for a few seconds and then came back upstairs. A subsequent search of the basement resulted in the discovery of large amounts of cocaine, drug paraphernalia, and cash. 15 Kan. App. 2d at 478-79. In reaching its decision, this court stated that "[w]here reliance is placed on circumstantial evidence, the circumstances in question must themselves be proved and cannot be inferred or presumed from other circumstances." 15 Kan. App. 2d 476, Syl. ¶ 13. Noting that "[i]n other Kansas cases dealing with constructive possession, more than mere presence or access to the drugs has been required to sustain a conviction," this court held that it is "reversible error to allow the jury to speculate on unjustifiable inferences" since "[g]uilt may never be based on inference alone." 15 Kan. App. 2d at 489-90.

With these precedents in mind, the State's case against Rios can be summarized as follows: Rios was a passenger in a car carrying a large amount of marijuana in its trunk; the driver of

the car gave Rios the keys, and Rios opened the trunk of the car at the request of a police officer; when asked about the marijuana, Rios made a palms-up gesture and looked confused; and there was an open road map of Colorado in the car near where Rios was sitting. The State did not introduce evidence that Rios was carrying a large amount of cash on his person, nor did it show that any of Rios' fingerprints were found on the marijuana packets, the bags, or the trunk. Although the State presented evidence that the clothes found next to the marijuana did not belong to Joe Flores, it presented no evidence showing that the clothes belonged to Rios.

The State does not contend that it has buttressed Rios' mere presence in the vehicle with any of the other circumstances listed in *Faulkner* or the annotation. Instead, the State points to the testimony of Officer Kuhlman that he traveled to Hays but was unable to find the name "Raphael Ramirez" or "Samson Aldaco" on any hotel register for the night in question. The State argues that this testimony contradicted the defendants and destroyed their credibility. The State concludes that the jury's disbelief of the defendants warrants a finding of guilt.

There are two problems with the State's argument. First, the rebuttal testimony of Officer Kuhlman did not rebut the testimony of Rios. It was Aldaco who described registering at a motel under the name "Ramirez." More importantly, though, the State's argument represents an impermissible effort to shift the burden of proof to Rios. Even uncontroverted evidence that Rios is a pathological liar would not relieve the State of its burden under the Due Process Clause of the Fourteenth Amendment to prove each element of the crime charged beyond a reasonable doubt. *Cruz*, 15 Kan. App. 2d at 488 (citing *In re Winship*, 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068 [1970]).

The necessary conclusion from a review of the record in this case is that findings of guilt are not justifiable based on the evidence presented. There was insufficient evidence to support Rios' convictions.

Rios' argument that the appointment of an unqualified interpreter denied him a fair trial need not be addressed.

The convictions of Rios are reversed. The case is remanded with directions to vacate the sentences imposed and to discharge Rios from custody.

Reversed.