(884 P.2d 1164)
No. 71,875

STATE OF KANSAS, *Appellee*, v. MICHAEL J. BELL, *Appellant*.

Opinion filed November 23, 1994.

*John Frydman*, of Lawrence, for the appellant.

*Peggy Kittel* and *Frank D. Diehl*, assistant district attorneys, *Gerald E. Wells*, district attorney, and *Robert T. Stephan*, attorney general, for the appellee.

Before PIERRON, P.J., BRAZIL, J., and DAVID PRAGER, Chief Justice Retired, assigned.

PIERRON, J.: Michael Bell appeals from his convictions of attempted criminal trespass and stalking. He challenges the trial court's denial of his request for a jury trial. He contends that the trial court misinterpreted K.S.A. 1993 Supp. 22-3404 by holding his request for a jury trial was untimely.

The facts in this case are simple and undisputed. The defendant was charged with one count of attempted criminal trespass, in violation of K.S.A. 1993 Supp. 21-3301 and K.S.A. 1993 Supp. 21-3721(a)(1)(B), and one count of stalking, in violation of K.S.A. 1993 Supp. 21-3438. He was arraigned in Division III of the Douglas County District Court on December 13, 1993, and entered a plea of not guilty.

On February 22, 1994, the defendant's case was transferred to Division I of the district court for trial setting. On March 11, 1994, the case was set for trial to commence on April 11, 1994. The defendant filed a written request for a jury trial on that same day, March 11, 1994.

The defendant's motion for a jury trial was considered on March 31, 1994. The trial court denied the defendant's request for a jury trial, concluding that the request was untimely. The court apparently found that the request for a jury trial should have been filed within seven days of February 22, 1994, the day the defendant was notified of the transfer to Division I.

On April 11, 1994, the defendant was tried by the court sitting without a jury. He was found guilty of one count of attempted criminal trespass and one count of stalking. Four days later, on April 15, 1994, the defendant filed a notice of appeal. He was subsequently sentenced to three months for the stalking and one month for the attempted criminal trespass. The sentences were to run consecutively. The defendant has apparently served the sentence.

Even if the issue is not raised by either party, "[w]hen the record discloses a lack of jurisdiction, it is the duty of the court to dismiss the appeal." *State v. Rios,* 19 Kan. App. 2d 350, 351, 869 P.2d 755 (1994). Thus, it is necessary to address a potential obstacle to this court's jurisdiction.

K.S.A. 22-3602 provides in part:

"Except as otherwise provided, an appeal to the appellate court having jurisdiction of the appeal may be taken by the defendant as a matter of right from any *judgment* against the defendant in the district court and upon appeal any decision of the district court or intermediate order made in the progress of the case may be reviewed." (Emphasis added.)

"For purposes of K.S.A. 22-3602(a), 'judgment' requires both a conviction and a sentence." *Rios*, 19 Kan. App. 2d at 352. In *City of Topeka v. Martin*, 3 Kan. App. 2d 105, 590 P.2d 106 (1979), this court held that it was without jurisdiction to consider an appeal filed before sentencing because "[a]n order finding a defendant guilty is not an appealable order." This position was reaffirmed in *State v. Wilson*, 15 Kan. App. 2d 308, 310, 808 P.2d 434 (1991): "The judgment in a criminal case becomes effective, and the time period for appeal starts running, when the defendant's sentence is pronounced from the bench."

The defendant's notice of appeal was filed on April 15, 1994. He was not sentenced until May 5, 1994. Therefore, his notice of appeal was premature. Absent an exception, this court would be without jurisdiction to consider defendant's appeal.

In *Rios,* this court created an exception to the jurisdictional barrier caused by a premature notice of appeal. The court found that under certain circumstances, "interests of fundamental fairness dictate that [a defendant] should not be penalized for the mistakes of his attorney." 19 Kan. App. 2d at 354.

To invoke the *Rios* exception, three things must be shown: "(1) the trial court furnishes a defendant with an attorney who fails to properly perfect the appeal; (2) the State fails to raise the jurisdiction issue; and (3) the State does not claim prejudice from the fact the appeal was filed too early." 19 Kan. App. 2d 350, Syl. ¶ 7.

This case fits squarely within the exception announced in *Rios*. First, on December 13, 1993, the trial court appointed John Frydman to represent the defendant. Frydman was defense counsel when the premature notice of appeal was filed. Second, the State has not raised any questions regarding the jurisdiction of this court. Finally, the State does not claim prejudice from the pre-

mature notice of appeal. As noted in *Rios*, " '[t]he appellee will not be prejudiced because the appellee will know of the intent to appeal prior to final judgment and would be in the same position as if a notice of appeal had been filed after the final judgment.' " 19 Kan. App. 2d at 354 (quoting *Honeycutt v. City of Wichita*, 251 Kan. 451, 462, 836 P.2d 1128 [1992]).

Under the exception created in *Rios*, this court finds it has jurisdiction to consider the defendant's appeal.

The defendant raises but a single issue on appeal, contending that the trial court erred by denying his request for a jury trial. The proper procedure for requesting a jury trial in a case involving a misdemeanor is found in K.S.A. 1993 Supp. 22-3404, which provides in part:

"(1) The trial of misdemeanor and traffic offense cases shall be to the court unless a jury trial is requested in writing by the defendant not later than seven days after *first notice of trial assignment* is given to the defendant or such defendant's counsel." (Emphasis added.)

The defendant filed a written request for a jury trial on March 11, 1994. The trial court found that he received "first notice of trial assignment" on February 22, 1994, the day the case was transferred to Division I. According to the trial court's interpretation, March 3, 1994, was the last day that a timely request could be made. Therefore, the defendant's request for a jury trial on March 11, 1994, was untimely.

The defendant, on the other hand, argues that the trial court misinterpreted K.S.A. 1993 Supp. 22-3404(1) and contends that a correct interpretation would start the seven-day period running on March 11, 1994, the day the case was set for trial. Under the defendant's interpretation, his written request for a jury trial would be timely and the trial court erred by denying that request.

The defendant does not allege he did not receive notice of the trial assignment. He only contends the trial court erroneously concluded that trial assignment occurred on February 22, 1994, rather than March 11, 1994.

The defendant's appeal requires this court to decide the proper meaning of the phrase "first notice of trial assignment," as it is

used in 22-3404(1). This is the first time a Kansas appellate court has been called upon to interpret that portion of the statute.

It is worth noting that the legislature has chosen to use identical language in another section of Chapter 22 of the Kansas Statutes Annotated. In K.S.A. 1993 Supp. 22-3609(4), which establishes the procedure for requesting a jury trial of municipal court appeal cases, the legislature wrote:

"(4) The trial of municipal appeal cases shall be to the court unless a jury trial is requested in writing by the defendant not later than seven days after first notice of trial assignment is given to the defendant or such defendant's counsel."

Like the identical language in 22-3404(1), the phrase "first notice of trial assignment," as used in 22-3609(4), has not yet been the subject of appellate court interpretation.

"When construing a statute, a court should give words in common usage their natural and ordinary meaning." *Bank IV Wichita v. Plein*, 250 Kan. 701, 705-06, 830 P.2d 29 (1992). By applying this rule of statutory construction to the term "trial assignment," the meaning of that term is clear. The root of the word "assignment" is "assign," which means "to appoint (one) to a post or duty." Webster's Third New International Dictionary 132 (1986). The word "trial," as used in 22-3404(1), merely refers to the duty to which one is assigned. Thus, the term "trial assignment," as used in 22-3404(1), means to appoint a judge to the duty of presiding over a case at trial. In other words, "trial assignment" is essentially the same thing as "assignment for trial."

The defendant's case was "transferred" for trial setting from Division III to Division I on February 22, 1994. Although the appearance docket sheet uses the word "transfer," rather than "assignment," the distinction is of no significance in this context. The procedure for assigning cases is provided for in the local rules of the District Court of Douglas County. According to Local Rule 1(E)(2), all arraignments and bond hearings in misdemeanor cases shall be in Division III. Thereafter, "those misdemeanor cases . . . in which a trial is required, shall be *assigned* to the four divisions of court [in a manner that will equalize the case load among the Judges]." Douglas County District Court Local

Rule 1(E)(2)(b). See also Douglas County District Court Local Rule 1(A). "After such assignment, all proceedings shall be held in the division to which the case has been assigned and before the Judge thereof." Douglas County District Court Local Rule 1(a).

Consistent with the local rules, the defendant was arraigned in Division III. Thereafter, his case was assigned to Division I on February 22, 1994. The assignment on February 22, 1994, commenced the running of the seven-day period within which to request a jury trial. The defendant's request was made on March 11, 1994, after the expiration of seven days after first notice of trial assignment. The trial court did not err in denying the defendant's untimely request for a jury trial. See *Scantlin v. Superior Homes, Inc.*, 6 Kan. App. 2d 144, 146, 627 P.2d 825 (1981).

According to the defendant, the phrase "first notice of trial assignment" is ambiguous and can give rise to three different meanings. He argues the court is faced with ambiguous language which could be variously interpreted as "first appearance before a judge," "first notice of case assignment to a division of the district court," or "first notice of trial setting."

The defendant's argument itself illustrates the distinction intended by the legislature. Of the three interpretations offered by the defendant, only "first notice of case assignment to a division of the district court" is consistent with the language used in 22-3404(1). Both terms, "first appearance" and "trial setting", have " 'acquired a peculiar and appropriate meaning in law, [and] shall be construed according to their peculiar and appropriate meanings.' " *Hudgens v. CNA/Continental Cas. Co.*, 252 Kan. 478, 483, 845 P.2d 694 (1993).

The term "trial setting" appears several times in the Kansas Statutes Annotated, and the context in which it is used makes clear that it connotes the scheduling of a matter for trial, *i.e.*, the date and time. Particularly enlightening is K.S.A. 60-2702a, which codifies the Rules of the Supreme Court. Rules 131 (1993 Kan. Ct. R. Annot. 127) and 162 (1993 Kan. Ct. R. Annot. 142) establish requirements for notifying parties of trial settings and resolving conflicting trial settings. Rule 131 provides:

"Notice of Hearings and Trial Settings

"(a) If any party seeks the hearing of any motion on a required day of court and it is not a motion which may be heard *ex parte*, or if the judge sets a hearing on this day of court, notice of the hearing shall be given to all parties affected either by the party, or by the clerk at the direction of the judge, not less than seven (7) days prior to the date of hearing.

. . . .

"(d) Nothing in this rule shall be construed to prevent the parties, acting through their respective counsel, from agreeing on a date for a hearing on a motion or trial of the action on its merits provided counsel first receives the approval of the date from the judge to whom the action is assigned."

The term "trial setting" clearly refers to scheduling a date and time for a trial and cannot be interpreted to mean the same thing as "trial assignment."

The term "first appearance" before a judge also has a definite meaning. The first or "initial appearance" is defined as "a court proceeding for a defendant charged with a felony, during which the judge advises the defendant of the charges against him and of his rights, decides upon bail and/or other conditions of release, and sets the date for a preliminary hearing." Black's Law Dictionary 97 (6th ed. 1990).

Although Kansas uses "first appearance" in misdemeanor cases as well as felony cases, the definition of the term is otherwise consistent with the definition given in Black's Law Dictionary. See K.S.A. 1993 Supp. 21-2501(b) and K.S.A. 1993 Supp. 22-2802. If the legislature had intended that a jury request be made within seven days of the first appearance whether or not the judge at the first appearance would be the trial judge, it would have presumably used that language.

" 'It is presumed the legislature understood the meaning of the words it used and intended to use them; that the legislature used the words in their ordinary and common meaning; and that the legislature intended a different meaning when it used different language in the same connection in different parts of a statute.' [Citation omitted.]" *Bank of Kansas v. Davison,* 253 Kan. 780, 788, 861 P.2d 806 (1993).

It is a well-known rule of statutory construction that " '[o]ur criminal statutes are to be construed strictly against the State.' " *State v. JC Sports Bar, Inc.,* 253 Kan. 815, 818, 861 P.2d 1334

(1993) (quoting *State v. Sexton*, 232 Kan. 539, 543, 657 P.2d 43 [1983]). However, the rule that criminal statutes are construed strictly against the State remains subordinate to the rule that the intent of the legislature will control if it can be ascertained. *State v. Schlein*, 253 Kan. 205, 215, 854 P.2d 296 (1993). " 'It is a fundamental rule of statutory construction, to which all other rules are subordinate, that the intent of the legislature governs if that intent can be ascertained.' " *City of Wichita v. 200 South Broadway*, 253 Kan. 434, 436, 855 P.2d 956 (1993) (quoting *West v. Collins*, 251 Kan. 657, Syl. ¶ 3, 840 P.2d 435 [1992]). See *State v. Gonzales*, 255 Kan. 243, 248-49, 874 P.2d 612 (1994).

Although sparse, the legislative history of 22-3404 lends considerable insight into the purpose and·intent of the legislature. It also demonstrates that the trial court's interpretation of the term "first notice of assignment" is the proper interpretation for carrying out the intent of the legislature.

K.S.A. 22-3404(1) was amended in 1989. Prior to the 1989 amendment, all trials of misdemeanor cases were to the court, "unless a jury trial [was] requested in writing by the defendant not later than 48 hours prior to the trial." The purpose of amending this section was to make the process "more efficient and . . . facilitate case flow management and reduce delay." Minutes of the House Committee on the Judiciary, March 20, 1989.

In 1992, the legislature also amended K.S.A. 22-3609(4). Prior to the amendment, it allowed a defendant, in an appeal from a district court magistrate, to request a jury trial "in writing . . . not later than 48 hours prior to trial." The 1992 amendment to 22-3609(4) changed the language of that section to the identical language used in the 1989 amendment to 22-3404(1). The legislative history of the 1992 amendment to 22-3609(4) further illustrates the purpose of requiring a defendant in a misdemeanor case to request a jury trial "not later than seven days after first notice of trial assignment."

According to the minutes of the Subcommittee on Criminal Law of the House Judiciary Committee, March 27, 1992, the amendment "would allow adequate preparation of cases and also

reduce the number of continuances due to delayed requests for jury trials." Apparently the defect in the prior procedure was that a case would be set for trial to the court, and then only 48 hours prior to trial the defendant would request a trial by jury. The trial would then need to be rescheduled, causing considerable delay. See also Minutes of the Subcommittee on Criminal Law of the Senate Judiciary Committee, March 3, 1992 ("It has been the tactic of defense counsels to use this particular statute to delay the adjudication process in the District Courts.").

The legislative history of 22-3404(1) indicates the trial court properly interpreted the term "trial assignment." The defendant's proposed interpretation, on the other hand, would entirely frustrate the purpose of the amendment. He argues he had seven days from March 11, 1994, the date of the "trial setting," to request a jury trial. If the request for a jury trial is made after the case is set for trial, the court would again have to reschedule. Delay caused by rescheduling is the very evil that the legislature sought to eliminate. "[R]emedial legislation should be liberally construed to effectuate the purpose for which it was enacted." *Smith v. Marshall*, 225 Kan. 70, 75, 587 P.2d 320 (1978).

While we find the court was correct in its analysis of the "trial assignment" language, we see another facial error of constitutional proportions in the denial of a jury trial.

Under *State v. Irving*, 216 Kan. 588, 533 P. 2d 1225 (1975), and a recent Court of Appeals decision relying on *Irving*, *State v. Jones*, 19 Kan. App. 2d 982, 879 P. 2d 1141 (1994), a defendant charged with a misdemeanor or traffic offense, where the potential imprisonment exceeds six months, has a right to a jury trial, regardless of whether it is requested within seven days after notification of a trial assignment. In order to waive the right to a jury trial under these circumstances, the defendant must first be advised by the court of his or her right to a jury trial, and the defendant must personally waive that right in writing or in open court.

We are aware that trial judges at arraignment or other appropriate times will sometimes inform the defendant that a sentence of greater than six months will *not* be given if the defendant is

found guilty of a misdemeanor. This removes the potential of a sentence greater than six months. The record before us does not reflect this was done. If the record is otherwise, it might affect this decision. However, based on the record before us, the defendant faced a potential sentence of six months on the stalking count and an additional month on the attempted criminal trespass count. Under these facts, even though the eventual sentence was less than six months, he was entitled to the protections of *Irving*. Since he did not receive them, we must reverse and remand for jury trial.

Reversed and remanded for jury trial.