NOT DESIGNATED FOR PUBLICATION

No. 111,520

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

REGINALD ARNOLD,
*Appellant*.


MEMORANDUM OPINION

Appeal from Wyandotte District Court; ROBERT P. BURNS, judge. Opinion filed September 25, 2015. Affirmed.

*Peter Maharry* and *Carol Longenecker Schmidt*, of Kansas Appellate Defender Office, for appellant.

*Sheryl L. Lidtke*, chief deputy district attorney, *Jerome A. Gorman*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, C.J., ARNOLD-BURGER, J., and LARSON, S.J.

*Per Curiam*: Reginald E. Arnold, Jr., appeals his convictions of seven counts of sexual exploitation of a child under the age of 14 and three counts of sexual exploitation of a child under the age of 18. Arnold claims the district court erred in admitting and playing the videos containing pornographic images of children when he was willing to stipulate to the content of the videos. He also claims the district court erred when it failed to instruct the jury on nonexclusive possession of the computer where the images were found. For the reasons stated herein, we affirm the district court's judgment.

1

FACTUAL AND PROCEDURAL BACKGROUND

We will review the facts in detail. Special agents of the Kansas Attorney General's office conducted an undercover internet operation in February 2010. The agents used peer-to-peer software connecting to specific internet networks known for file-sharing, including networks known for the sharing of child pornography images. The peer-to-peer software allows individuals to trade files and images and to search for pictures, movies, and other digital files from other unidentified persons' computers. With these programs, a recipient of images can leave such files in an "open" folder on their own computer that is accessible by other internet users by using search terms. Based upon specific file encryption methods, agents knew that encrypted digital files were tagged with unique identification tags. As a result, agents could use the peer-to-peer software to access open computer files on other persons' computers and compare the identification tags of the files with tags from known child pornography files.

While conducting this investigation, one of the agents found what appeared to be files containing child pornography with recognized identifiers on various computers. By checking the IP address of those computers, the agents determined on February 28, 2010, that one of the computers was located in Kansas; that computer had five publically available files containing digital signatures previously linked to files containing child pornography. An agent downloaded these files and confirmed that all five files were videos containing images of children engaged in sexual activity. After subpoenaing the internet provider, agents learned that the IP address of the suspect computer was registered to Arnold at an address in Kansas City, Kansas.

These agents, together with Kansas City, Kansas, police officers, obtained and executed a search warrant at the Arnold address on April 22, 2010. During the search, officers seized a Macintosh desktop computer and a Dell tower computer found in Arnold's bedroom. The Dell computer was connected to the big screen television in

Arnold's bedroom. Arnold admitted to officers that the computers belonged to him. After receiving *Miranda* warnings, Arnold told officers that he had the sole "user account" on the computers, although he told officers that his cousins sometimes used his computers. Arnold refused to provide his cousins' names. The Dell computer was not turned on when it was discovered during the search. When officers turned on the Dell, they discovered that the start-up program was password protected.

A forensic exam of Arnold's Dell computer resulted in the discovery of 107 unallocated and 23 allocated video files. Unallocated files are deleted files that remain stored on the computer's hard drive until they are overwritten by new files. These files depicted nude children or files with a child or children engaging in sexual acts. The computer also contained 3 still image digital files with nude children or children engaging in sexual acts and 312 still digital photographs that possibly depicted a nude child or child engaging in sexual acts. The exam also found that the computer had visited 42 web pages, all of which contained either still photos or videos depicting nude children, children engaged in sexual acts, or words related to sexual acts including children. The dates and times for all video and image files identified in the criminal charges were downloaded while Arnold was not working at his job as a Kansas City fireman.

On September 1, 2011, the State charged Arnold with 10 counts of sexual exploitation of a child; some of the charges were off-grid felonies and some were severity level 5 person felonies. In the amended complaint, the State alleged Arnold committed seven counts of sexual exploitation of a child under the age of 14; in all of those counts, the State charged Arnold, in the alternative, with severity level 5 sexual exploitation of a child. In addition, the State charged Arnold with three counts of sexual exploitation of a child under the age of 18.

At a pretrial conference 12 days prior to trial, defense counsel advised the district court that he was attempting to work out a stipulation with the State regarding the videos

3

found on Arnold's computer. Defense counsel reported that the only issue in the case would be whether Arnold possessed and/or promoted the pornography; counsel reported that Arnold would not dispute that the digital images were pornography or that they involved children. Defense counsel argued that allowing the State to play any part of the videos would be highly prejudicial. The prosecutor reported that she did not intend to play the entirety of the various recordings but would play a very small portion of each to prove the elements of the crime.

The morning of the trial, the attorneys advised the district court that they had been unable to reach an agreement on any stipulation. For the first time, Arnold advised the district court that law enforcement reports went into graphic detail about the content of the videos and that he expected the case agents to testify about the content of the videos. Defense counsel stated that he would not object to such testimony but did object to the playing of the videos in addition to such testimony. There is no indication in the record that defense counsel provided the trial judge with copies of the detailed law enforcement reports during this hearing.

After hearing statements of counsel, the district court ruled that the State could not be forced to enter into a stipulation and was allowed to prove its case as it saw fit. The district court stated it was inclined to allow portions of the videos to be played so the agents could confirm the evidence was found on Arnold's computer.

During the trial, special agents from the attorney general's office testified about their investigation, how it led them to Arnold's home, and their execution of a search warrant at that home. The State presented Exhibit 65, a screen shot showing the file names found in the shared folder from Arnold's computer's IP address obtained during the initial computer internet investigation; those file names contained acronyms and age information indicating the files likely contained child pornography.

Anthony Celeste, a former special agent with the attorney general's office, testified that a Limewire program—a file-sharing program—had been installed on Arnold's computer prior to its seizure. Celeste testified how files can be left in "shared folders" so anyone using the internet can look at them. The State introduced 63 photographs depicting Arnold's house, various rooms, vehicles, and computer equipment. The State also presented testimony that confirmed that Arnold was not on the fire department work schedule on the days that his computer indicated the 10 videos were downloaded.

Sergeant Vincent Bass worked at the Heart of America Regional Computer Forensics Lab at all times relevant to this case. He examined the Dell tower and every other electronic item seized from Arnold's house except the MacIntosh computer. Bass testified that all the child pornography found on the Dell computer was downloaded through Limewire to the owner-profile "my documents" section of the computer. Bass extracted 10 files from the Dell computer that he believed contained child pornography. He testified about the names of the files, which included acronyms and terms indicating the files involved children and sexual activity. He also testified that the files were "active" files and identified the dates and times each of the files were downloaded onto Arnold's computer. The files had all been downloaded between 10:45 p.m. and 3:20 a.m. on various days between February 10 and April 13, 2010. Bass testified that all 10 files were in the "shared folder" of the Dell computer so that it could be accessed by others using peer-to-peer sharing programs over the internet.

Special Agent Monicka Richmeier of the attorney general's office received and reviewed Bass' report from the Heart of America Regional Forensics Lab. In reviewing the report, Richmeier testified that the search of Arnold's Dell computer contained 312 still photographs of child pornography, 130 videos or films of child pornography, and 42 web pages including child pornography. With respect to the 10 videos identified in the amended complaint, Richmeier prepared a written report listing the files' names and created a DVD so they could be reviewed by the prosecutor's office. Richmeier identified

5

Exhibit 69 as a DVD containing the 10 videos extracted from Bass' report. Defense counsel objected to the admission of the videos. Counsel argued that if witnesses were going to testify about the content of the videos, the videos themselves had no probative value and were so prejudicial to deprive Arnold of a fair trial.

The district court reviewed the proposed video exhibit in camera and overruled Arnold's objection. After the court made this ruling, defense counsel asserted that Richmeier's written report contained a detailed factual synopsis of each video and that Arnold was prepared to stipulate to the report instead of playing the actual videos. However, Richmeier's report was never admitted into evidence and the record does not reflect that the written report was ever proffered to the judge for review. In response, the State asserted that it would only be playing a short excerpt—1 or 2 minutes—of each video. The district court again overruled Arnold's objection.

The trial transcript indicates that each of the 10 videos was played, although the court reporter did not record the amount of time the videos were displayed to the jury. Defense counsel did not object that the State exhibited more than a couple of minutes from each video. After the videos were played, the State rested.

Arnold's sole witness was his father, Reginald Arnold, Sr. (Reginald, Sr.). Reginald, Sr., testified that he lived with his son at the home searched in this case. Reginald, Sr., stated that the Dell computer seized during the search belonged to Arnold and was located in his room. He also testified that Arnold frequently invited friends into his room. Reginald, Sr., also testified that his adult nephew—who was homeless—stayed at the home from time to time and had access to Arnold's room and his computer. Finally, Reginald, Sr., testified that Arnold's friends would be on his computer when Arnold was not there and that Reginald, Sr., believed Arnold was too trusting of his friends.

During the subsequent jury instruction conference, Arnold's attorney requested an instruction on "joint possession," citing *State v. Rios*, 19 Kan. App. 2d 350, 869 P.2d 755 (1994). The district court stated that it had reviewed the case and concluded it would only give the latest PIK instruction on possession. There is no indication in the record that Arnold filed written proposed instructions before or during the trial or a proposed instruction for his "joint possession" theory.

After the district court instructed the jury and counsel made closing arguments, the district court noted that the DVD, including the 10 videos, was admitted into evidence, but there was no way to play it for the jurors while they were in the jury room. The district court told the jurors that if they wanted to view that exhibit, they should inform the bailiff and the court would make arrangements to play it for them. The record does not reflect that any such request was made.

The jury found Arnold guilty of all 10 counts. Of the seven counts with alternative charges, the jury found Arnold guilty of each alternate charge. Arnold filed a timely motion for new trial and attached part of Richmeier's written report containing a factual synopsis of each video to his motion. Arnold also filed a motion for both a durational and dispositional departure from the mandatory sentence under Jessica's Law.

The district court held the sentencing hearing on August 28, 2013. After hearing arguments of counsel, the district court denied Arnold's motion for new trial. The court found there were no substantial and compelling reasons for a dispositional departure. However, the district court granted a durational departure by imposing 34-month terms for each of the off-grid crimes and 32 months for each of the severity level 5 crimes. The district court ordered two of the terms to run consecutively for a controlling sentence of 68 months' imprisonment. Arnold timely appealed the district court's judgment.

7

On appeal, Arnold first claims the district court erred in admitting and playing the videos containing pornographic images of children when he was willing to stipulate to the content of the videos. Arnold contends that the probative value of the videos was outweighed by their prejudicial effect in light of other evidence available to prove the State's case. The State argues that it had discretion on how to present its case in order to prove the elements of the crimes and the videos were probative to establish that Arnold was promoting child pornography and also to prove his intent. The State emphasizes that it only showed brief portions of each video and argues that the district court did not abuse its discretion by admitting the evidence.

In evaluating the propriety of the admission of evidence, an appellate court must apply a multiple-step process. First, the appellate court must determine whether the evidence is relevant. *State v. Bowen*, 299 Kan. 339, 348, 323 P.3d 853 (2014). Generally speaking, all relevant evidence is admissible. K.S.A. 60-407(f). K.S.A. 60-401(b) defines relevant evidence as "evidence having any tendency in reason to prove any material fact." Evidence is material when the fact it supports is in dispute. *Bowen*, 299 Kan. at 348. Evidence is probative if it has a logical tendency to prove any material fact. *State v. Lowrance*, 298 Kan. 274, 289, 312 P.3d 328 (2013).

Arnold does not dispute the videos seized by law enforcement were "the genesis of the charges" filed against him. Instead, his argument is limited to the claim that the probative value of the videos was outweighed by their prejudicial effect. See K.S.A. 60-445. An appellate court reviews any such determination for an abuse of discretion. See *Lowrance*, 298 Kan. at 291. A judicial action constitutes an abuse of discretion if the action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *State v. Mosher*, 299 Kan. 1, 3, 319 P.3d 1253 (2014).

Arnold argues that the district court erred in admitting the videos of child pornography because he was willing to stipulate to what the videos depicted. But our review of Arnold's claim is hindered by the fact that Arnold never proffered a proposed written stipulation to the district court. Also, although Arnold explained to the district court during the trial that Richmeier's written report described the content of the videos in detail, this report was never offered nor admitted into evidence and the report was not provided to the district court until Arnold filed his posttrial motion for new trial. It is difficult for Arnold to establish that the district court abused its discretion by not allowing a written stipulation in lieu of the videos when Arnold never offered a written stipulation for the district court to consider.

Arnold cites *State v. Miller*, 284 Kan. 682, 702, 163 P.3d 267 (2007), to support his argument that the probative value of the videos was outweighed by the prejudicial effect. In *Miller*, the defendant was accused of murdering his wife in order to conceal a "'double life'" he was leading. 284 Kan. at 700. In order to establish this double life, the State presented several explicit photographs of the defendant with a woman with whom he was having an affair. The State also presented the testimony on the defendant's extensive collection of adult pornography, with two examples actually shown at trial. Our Supreme Court ultimately determined that the two photographs of the adult pornography were not sufficiently probative and were unduly prejudicial, although the court found the error to be harmless. 284 Kan. at 701-03. *Miller* provides little assistance to support Arnold's claims. Unlike *Miller*, the entirety of Arnold's case is focused on child pornography, not Arnold's motive to commit another crime such as murder.

Arnold also cites *United States v. Merino-Balderrama*, 146 F.3d 758, 763 (9th Cir. 1998). In that case, a search of the defendant's vehicle resulted in the discovery of one magazine and seven 8-millimeter films containing child pornography. Each of the seven films was in a separate box that was covered by still photographs from the films in question depicting child pornography. The defendant told police that he did not have any

9

equipment to view the 8-millimeter films seized from his vehicle. During the jury trial, the government introduced into evidence the seven films, the still photographs that were the covers from the film boxes, and the magazine. The defendant did not object to the introduction of these items but did object when the government proposed to show the films to the jury. Instead, the defendant offered to stipulate that the films traveled in interstate commerce and contained child pornography. The district court overruled the objection, and the government was allowed to show the jury several minutes from six of the seven films.

The Ninth Circuit Court of Appeals found that the films were less probative of scienter than the films' box covers. 146 F.3d at 762-63. The films' box covers—which the defendant undisputedly did see—contained still shots depicting child pornography from the films in question. Thus, the appeals court found that the district court erred by showing the films to the jury. 146 F.3d at 762-63. *Merino-Balderrama* is a unique case because the films' box covers contained still photographs from the films in question making it unnecessary to show the films to the jury. Because the facts of *Merino-Balderrama* are distinguishable from the facts herein, the case provides little assistance to support Arnold's claims.

As a general rule, the State is entitled to use the full weight of its evidence to establish the elements of the crime for which the defendant is charged. A narrow exception exists when the defendant is charged with a crime and the government must establish the defendant's prior conviction as an element of the offense. See *Old Chief v. United States,* 519 U.S. 172, 190-91, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997). In *Old Chief*, the Court held that a defendant charged with being a felon in possession of a firearm could stipulate that he had a prior felony conviction to prevent the prosecution from introducing evidence about the nature of his past crime. The Court reasoned that the defendant's prior conviction was "wholly independent[ ] of the concrete events of later criminal behavior charged against him," and excluding evidentiary details of that past

10

crime "would not deprive the prosecution of evidence with multiple utility." 519 U.S. at 190. The narrow exception of *Old Chief* is not applicable in Arnold's case involving child pornography where the evidence presented was not "wholly independent" of the crimes charged.

As the State points out, there are numerous cases where courts have refused to require the government to accept a defendant's stipulations to the content of photographs, videos, or other articles in order to avoid jurors from seeing the actual pornography at issue. For example, in *United States v. Schene,* 543 F.3d 627, 642-43 (10th Cir. 2008), the Tenth Circuit Court of Appeals found that the trial court did not abuse its discretion in admitting eight exhibits in a child pornography case even though the defendant proposed to stipulate the photos in the exhibits depicted child pornography. The court found that the defendant's stipulation "involved 'the gist of the government's current case'" and that the government was entitled to prove its case with the full evidentiary force of its proof. 543 F.3d at 643.

A majority of the federal courts have recognized that depictions of child pornography were relevant not only to show they were, in fact, child pornography, but to allow the jury to infer intent on a defendant's part to collect such items. *Schene,* 543 F.3d at 643; *United States v. Dodds*, 347 F.3d 893, 898 (11th Cir. 2003); see also *United States v. Blank,* 701 F.3d 1084, 1092 (5th Cir. 2012) ("'the prosecution is entitled to prove its case free from any defendant's option to stipulate the evidence away'"); *United States v. Morales-Aldahondo*, 524 F.3d 115, 120 (1st Cir. 2008) (government was not required to accept a defendant's attempt to use a stipulation to overcome its right to fully present its evidence of the crime charged); *United States v. McCourt*, 468 F.3d 1088, 1091 (8th Cir. 2006) (stipulating to an element of the offense does not constitute an evidentiary alternative having equal or greater probative value); *United States v. Sewell*, 457 F.3d 841, 843-44 (8th Cir. 2006) (presenting pornographic images stored on defendant's

11

computer was relevant to dispute defendant's claim that he was unaware his file-sharing program downloaded such images).

Here, the videos introduced into evidence at Arnold's trial were central to the State's case. The videos were probative to establish that Arnold was promoting child pornography and also to prove his intent. The State was entitled to use the full weight of its evidence to establish the elements of the crimes for which Arnold was charged, and Arnold was not entitled to pick and choose what evidence the jury would hear. The fact that the State only showed brief portions of each video undercuts Arnold's argument that the evidence was unduly prejudicial. We conclude Arnold fails to show that the district court abused its discretion by admitting the evidence.

JURY INSTRUCTION ON NONEXCLUSIVE POSSESSION

Next, Arnold contends the district court erred when it failed to instruct the jury on nonexclusive possession of the computer where the images were found. Once again, our review of Arnold's claim is hindered because he never offered any proposed written instruction that he wanted to present to the jury. Instead, Arnold simply asked the district court to provide an instruction on "joint possession" based on the holding in *State v. Rios*, 19 Kan. App. 2d 350, 869 P.2d 755 (1994). In *Rios*, the court cited factors to consider in nonexclusive drug possession cases to include:

> "(1) incriminating statements made by defendant; (2) suspicious behavior on the part of the defendant; (3) previous drug sales by defendant; (4) defendant's use of narcotics; (5) proximity of defendant to the area where drugs were found; (6) drugs found in plain sight; and (7) other drugs or paraphernalia found on defendant." 19 Kan. App. 2d at 357-58.

Instead of providing a modified *Rios* instruction, the district court provided the jury with a standard PIK instruction defining possession. Specifically, the district court

12

instructed that "'[p]ossession' means having joint or exclusive control over an item with knowledge of and the intent to have such control or knowingly keeping some item in a place where the person that has some measure of access and right of control."

The standard of review when questions of jury instructions are raised is well established:

> "'(1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).'" *State v. Woods*, 301 Kan. 852, 876, 348 P.3d 583 (2015).

"An appellate court examines jury instructions as a whole, without focusing on any single instruction, in order to determine whether they properly and fairly state the applicable law or whether it is reasonable to conclude that they could have misled the jury." *State v. Williams*, 42 Kan. App. 2d 725, Syl. ¶ 1, 216 P.3d 707 (2009), *rev. denied* 290 Kan. 1104 (2010); see also *State v. Hilt*, 299 Kan. 176, 184-85, 322 P.3d 367 (2014). Although the use of PIK instructions is not required, it is strongly recommended, as these "instructions have been developed by a knowledgeable committee to bring accuracy, clarity, and uniformity to jury instructions. [Citation omitted.]" *State v. Acevedo*, 49 Kan. App. 2d 655, 663, 315 P.3d 261 (2013); see also *State v. Dixon*, 289 Kan. 46, 67, 209 P.3d 675 (2009).

There is some question on whether there was sufficient evidence at Arnold's trial to support a special jury instruction on nonexclusive possession. As the State points out, Arnold's Dell computer that contained all the images of child pornography was password protected. Presumably only Arnold could gain access to the images on the computer. But Arnold's father testified that Arnold's friends would be on his computer when he was not at home and he believed Arnold was too trusting of his friends. He also testified that his adult nephew had access to Arnold's room and his computer. This testimony implied that Arnold's friends knew the password and had access to the Dell computer when Arnold was not at home. Thus, the trial evidence, viewed in the light most favorable to Arnold, would have supported a jury instruction on nonexclusive possession of the computer.

As we previously stated, Arnold never provided any proposed written instruction on nonexclusive possession that he wanted to present to the jury. Instead, Arnold simply asked the district court to provide an instruction based on the holding in *Rios*. But *Rios* was a drug possession case and the factors included in that case on nonexclusive possession would have required extensive modification to fit Arnold's case.

Here, the district court gave the standard PIK instruction that possession means having joint or exclusive control over an item with knowledge of and intent to have such control. The instruction given by the district court fairly and accurately stated the applicable law and allowed Arnold to argue his theory of the case that other people had access to his Dell computer. Under the circumstances of this case, we conclude that Arnold has failed to show that the district court erred by failing to give a modified instruction on nonexclusive possession.

Affirmed.

14