**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**James Robert HERNANDEZ,**
**Defendant–Appellant.**

No. 95–50181.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 5, 1996.

Withdrawn from Submission Aug. 8, 1996.

Resubmitted March 24, 1997.

Decided March 31, 1997.

David J. Cohen, Law Office of David J. Cohen, San Francisco, CA, for defendant-appellant.

Michael G. Wheat, Assistant United States Attorney, San Diego, CA, for plaintiff-appellee.

Before: FLETCHER, TASHIMA, Circuit Judges, and JANE A. RESTANI,* Judge of the United States Court of International Trade.

PER CURIAM.

Petitioner James Robert Hernandez appeals from a conviction and sentence for violation of 18 U.S.C. § 922(g)(1) which prohibits possession of a firearm by anyone with a prior felony conviction. In the proceedings below, Hernandez offered to stipulate to his status as a felon. However, the government rejected Hernandez' offer to stipulate. At trial, over Hernandez' objection, the district court permitted the government to introduce into evidence an unredacted certified copy of the felony judgment and commitment which

---

* Hon. Jane A. Restani, Judge of the United States Court of International Trade, sitting by designa- tion.

recited that Hernandez had been convicted of burglary. The government also elicited testimony from Hernandez' parole officer, Randall Stewart, that Hernandez had been convicted of a felony. Because the risk of unfair prejudice to the defendant by this evidence substantially outweighed its probative value, the district court abused its discretion in admitting it despite the offer to stipulate to a felony conviction. *Old Chief v. United States*, —— U.S. ——, ——, 117 S.Ct. 644, 655, 136 L.Ed.2d 574 (1997).[1]

### I.

On February 23, 1992, San Diego police officers Gregory Sadar and Lee Timmerman observed a man dressed in dark clothing jump over a fence into an alley and run to the gate of an apartment building. Suspecting illegal activity, Officer Sadar approached the man, shined a flashlight in his face, announced he was a police officer, and told him he needed to speak to him. As Officer Sadar drew near, the man attempted to climb over a locked gate. Sadar and the man struggled. The gate burst open and the man began to run. Sadar took cover and drew his weapon. He saw the man draw a revolver from his waistband, and told him to drop his weapon. The man continued to run, throwing his gun away, and jumping a fence. The gun landed in the grass from whence it was recovered.

Officer Sadar lost sight of the man as he ran north. When Office Timmerman arrived to watch over the gun, Officer Sadar went looking for the man. Officer Timmerman put out a description of the man over his radio, and Officers Kyle and Hall responded several minutes later. An uninvolved citizen pointed out a man crouched behind a wall, sweating and looking panic-stricken. The man began to run. Officer Kyle briefly lost sight of the man, but Officer Hall had seen the direction the man was running and cut him off as he reentered the alley. Officer Hall arrested the man, who was identified as Hernandez. Officer Sadar arrived and identified Hernandez as the man with whom he had fought and seen with the gun several minutes earlier.

### II.

To prove a violation of § 922(g), the United States must prove (1) that the defendant knowingly possessed a firearm that had been shipped or transported interstate and (2) at the time the defendant possessed the firearm, the defendant had been convicted of a crime punishable by imprisonment for a term exceeding one year. 18 U.S.C. § 922(g).

At trial, Hernandez objected to the government's introduction of evidence regarding the facts surrounding the prior felony because those facts are superfluous and prejudicial. He requested that the documents be redacted to remove reference to the nature of the felony or that the parole officer testify that Hernandez was convicted of a crime punishable by more than one year without addressing the nature of facts underlying the felony. According to Hernandez, the fact that his prior conviction was for burglary would prejudice the jury because the police testified that they thought the individual who they saw jumping over the fence was a potential burglar.

■■■ Generally, the district court's admission of evidence is reviewed for an abuse of discretion. *United States v. Manning*, 56 F.3d 1188, 1196 (9th Cir.1995). The Supreme Court recently held that "a district court abuses its discretion if it spurns [a defendant's] offer and admits the full record of a prior judgment, when the name or nature of the prior offense raises the risk of a verdict tainted by improper considerations, and when the purpose of the evidence is solely to prove the element of prior conviction." *Old Chief*, —— U.S. at ——, 117 S.Ct. at 647. This case is on all fours with *Old Chief*. The evidence of the underlying facts of the defendant's prior conviction was highly prejudicial to the defendant. Because the defendant offered to stipulate to the existence of the second element of § 922(g), the district court abused its discretion when it rejected the stipulation and admitted evidence of the nature of Hernandez' prior felony conviction.

1. The district court did not have the benefit of *Old Chief's* holding at the time of its ruling.

## III.

■ Because this case is on direct appeal and Hernandez properly objected below, the government has the burden of establishing harmlessness in order for the conviction to be upheld. Whether under a "fair assurance" or a "more probably than not" standard, *See United States v. Hitt,* 981 F.2d 422, 425 (9th Cir.1992) (describing apparent conflict in this circuit as to appropriate standard of review for evidentiary error), the government has not demonstrated that the error was harmless. The evidence against Hernandez, while strong, was not overwhelming. Hernandez' fingerprints were not found on the gun. Although Officer Sadar identified Hernandez as the man with the gun, he saw Hernandez only briefly late at night. Tellingly, the jury was at first unable to reach a unanimous verdict.[2] The key issue at trial was identity: was Hernandez the man with whom Officer Sadar fought? The fact that Hernandez had been previously convicted of burglary could understandably (but impermissibly) lead the jury to conclude that Hernandez was in fact the man in dark clothes whom the police had accosted and who had escaped from them.

Hernandez' burglary conviction was mentioned during voir dire, during trial, and in the court's instructions to the jury. Although the court gave a limiting instruction that the jury should not consider the burglary conviction or any issue other than whether Hernandez had been convicted of a felony, we have previously expressed "skepticism of the efficacy of such instructions no matter when they are given. 'To tell a jury to ignore the defendant's prior convictions in determining whether he or she committed the offense being tried is to ask human be-

ings to act with a measure of dispassion and exactitude well beyond mortal capabilities.'" *United States v. Lewis,* 787 F.2d 1318, 1323 (9th Cir.) (quoting *United States v. Daniels,* 770 F.2d 1111, 1118 (D.C.Cir.1985)), *amended,* 798 F.2d 1250 (9th Cir.1986). In light of the closeness of this case and the highly prejudicial nature of the evidence, we conclude that the government has not established that the error was harmless.

## IV.

### A. *Recusal Motion*

■ Hernandez contends that the district judge erred in failing to recuse herself under 28 U.S.C. § 144[3] and 28 U.S.C. § 455.[4] He asserts that the district judge demonstrated bias by writing to the Ninth Circuit panel that had reversed her after the first trial. On appeal, Hernandez also contends for the first time that the judge exhibited bias in her exchange with venire person Karen Taylor, and in its impatience with defense counsel. The denial of a motion to recuse is reviewed for abuse of discretion. *United States v. Gordon,* 974 F.2d 1110, 1114 (9th Cir.1992). If a party fails to bring specific facts allegedly presenting grounds for recusal to the attention of the district court, the party will bear a greater burden on appeal. *United States v. Sibla,* 624 F.2d 864, 868 (9th Cir. 1980).

■ The substantive standard for recusal under 28 U.S.C. § 144 and 28 U.S.C. § 455 is the same: "[W]hether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *United States v. Studley,* 783 F.2d 934, 939 (9th Cir.1986)

---

**2.** After deliberating for approximately 3–4 hours, the jury sent a note to the trial court that it could not reach a unanimous decision. The court gave the jury an *Allen* charge shortly after which the jury reached its unanimous decision. We do not reach the contention that the giving of this instruction was error. *See* footnote 7, *infra.*

**3.** Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but

another judge shall be assigned to hear such proceeding.

28 U.S.C. § 144.

**4.** Any ... judge ... shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

　He shall also disqualify himself in the following circumstances: where he has a personal bias or prejudice concerning a party or personal knowledge of disputed evidentiary facts concerning the proceeding.
28 U.S.C. § 455(a)-(b)(1).

(quotation omitted). Ordinarily, the alleged bias must stem from an "extrajudicial source." *Liteky v. United States,* 510 U.S. 540, 554–56, 114 S.Ct. 1147, 1157, 127 L.Ed.2d 474 (1994). "[J]udicial rulings alone almost never constitute valid basis for a bias or partiality motion." *Id.* "[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.*

■ Hernandez does not allege any "extrajudicial source" for Judge Keep's alleged bias. Nor does he demonstrate such a deep-seated favoritism on the part of Judge Keep as to make fair judgment impossible. The original panel opinion, decided June 24, 1994, reversed Hernandez' conviction on two grounds: that the district court permitted undue emphasis on the transcript and that it abused its discretion in refusing defense counsel's request to review the transcript for accuracy. On July 5, 1994, Judge Keep sent a letter to the appellate panel regarding what she believed to be a factual error in the opinion. The panel ultimately amended its opinion by deleting the relevant section and replacing it with a footnote. *United States v. Hernandez,* 27 F.3d 1403, 1409 n. 5 (9th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1147, 130 L.Ed.2d 1106 (1995).

Judge Keep's letter does not demonstrate bias against Hernandez. There is nothing improper in a district judge writing a letter to an appellate panel pointing out a perceived factual error.[5] Although Judge Keep's letter takes a position on an issue in the case, that is not itself suggestive of bias: most district court rulings take a position on disputed issues in a case. Neither Judge Keep's letter nor her reaction to the amended opinion demonstrates "deep-seated favoritism or an-

tagonism." *Liteky,* 510 U.S. at 555, 114 S.Ct. at 1157.

As to Judge Keep's allegedly prejudicial comments during voir dire, Hernandez never objected to these comments or alleged that they warranted recusal. In any event, the comments do not establish "deep-seated bias or favoritism." *Id.*

■ As to defense counsel's request for "another ten or 15 seconds to explain [his] position," the district court had already denied Hernandez's challenge for cause at that time after previously hearing his explanation. The district court's refusal to give counsel additional time to explain his position does not constitute bias. "A judge's ordinary efforts at courtroom administration-even a stern and short-tempered judge's ordinary efforts at courtroom administration-remain immune." *Liteky,* 510 U.S. at 556, 114 S.Ct. at 1157.

## B. *Destruction of the Gun*

■ Hernandez contends that the government deprived him of his right to due process by destroying the gun that he was charged with possessing. He asserts that the indictment should have been dismissed. This court reviews de novo a claim that the prosecution improperly suppressed exculpatory evidence. *See United States v. Monroe,* 943 F.2d 1007, 1012 (9th Cir.1991), *cert. denied,* 503 U.S. 971, 112 S.Ct. 1585, 118 L.Ed.2d 304 (1992). However, the district court's underlying factual findings are reviewed for clear error. *See Exxon Co. v. Sofec, Inc.,* 54 F.3d 570, 576 (9th Cir.1995), *aff'd,* —— U.S. ——, 116 S.Ct. 1813, 135 L.Ed.2d 113 (1996).

Hernandez was arrested in February 1992 and first tried for possession of the gun in August of 1992. Prior to that trial, Hernandez retained experts to examine the gun and to testify at trial about the gun. Hernandez was convicted. He was sentenced in Decem-

---

5. In fact, Ninth Circuit General Order 10.10 provides that "[w]hen a district court judge is aware of a mistake in a disposition by the court involving an appeal from that judge's decision, has reason to believe that the affected parties may not point out the mistake, and thinks that justice will be disserved if the mistake is not corrected, that judge may bring the mistake to the attention of this court by way of a letter addressed to the clerk. The clerk shall distribute the letter to the members of the panel or as is otherwise appropriate. The district judge shall provide copies of the letter to all parties to the appeal."

ber 1992. In October 1993, while his appeal was pending, the gun was destroyed.

The district court held a hearing to determine under what circumstances the gun had been destroyed. Magdalena Ruiz, a San Diego Police Department investigative aide, testified that she was in charge of maintaining an inventory of all guns that were impounded and the disposal of guns. She testified that on October 31, 1993, she conducted a routine file review of impounded guns to see if they could be returned, destroyed, or saved. She ran a computer check which showed that the state charges against Hernandez had been dismissed. There was no indication that federal charges had been filed. She verified that there was no information regarding the registered owner of the handgun. As was her custom, she did not call the officers involved in the case for a status report. She did not receive a call from anyone to get rid of the gun. She disposed of the gun in accord with normal police department procedures.

The district court found that Hernandez had the opportunity to test the gun before the first trial, that the evidence was at most potentially exculpatory, and that there was no bad faith on the part of the government in the gun's destruction. We agree.

 The mere failure to preserve evidence which could have been subjected to tests which might have exonerated the defendant does not constitute a due process violation. *See Arizona v. Youngblood,* 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988); *Mitchell v. Goldsmith,* 878 F.2d 319, 321 (9th Cir.1989). Where the government fails to preserve evidence that is only potentially exculpatory, the right to due process is violated only if it possesses "an exculpatory value that was apparent before the evidence was destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta,* 467 U.S.

479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). Moreover, in *Youngblood,* the Supreme Court modified the *Trombetta* test by imposing the additional requirement that the defendant demonstrate that the police acted in bad faith in failing to preserve the potentially useful evidence. *Youngblood,* 488 U.S. at 58, 109 S.Ct. at 337–38.

 Hernandez presents no evidence of bad faith. Indeed, he does not even challenge the district court's finding that the government did not act in bad faith in destroying the gun. The district court's finding of no bad faith, based on Ruiz's testimony that she destroyed the gun pursuant to standard department procedures, is clearly supported by the record. Without proof of bad faith, Hernandez's claim fails under *Youngblood.*[6]

### Conclusion

The district court did not commit reversible error by failing to recuse itself or by refusing to dismiss the indictment due to the government's destruction of the gun. However, the district court abused its discretion in allowing introduction of highly prejudicial evidence. This error was not harmless. Accordingly, we reverse Henandez's conviction and remand to the district court.[7]

**REVERSED and REMANDED.**

---

6. Moreover, Hernandez was able to test (and did in fact test) the gun before it was inadvertently destroyed; thus Hernandez was able "to obtain comparable evidence by other reasonably available means." *Trombetta,* 104 S.Ct. at 2534, 467 U.S. at 489.

7. Because we remand this case for a new trial, we need not address the remaining issues of trial error raised by Hernandez on appeal.