**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Ernesto MERINO–BALDERRAMA,**
**Defendant–Appellant.**

No. 97–30303.

United States Court of Appeals, Ninth Circuit.

Submitted June 3, 1998 *.

Decided July 21, 1998.

* The panel unanimously found this case suitable for decision without oral argument.  Fed. R.App. P. 34(a) and Ninth Circuit Rule 34–4.

Fredilyn Sison, Federal Defenders of Eastern Washington and Idaho, Boise, ID, for Defendant–Appellant.

Wendy J. Olson, Assistant United States Attorney, Boise, ID, for Plaintiff–Appellee.

Before: LAY,** GOODWIN, and PREGERSON, Circuit Judges.

** Donald P. Lay, Senior Circuit Judge for the Eighth Circuit Court of Appeals, sitting by desig- nation.

PREGERSON, Circuit Judge:

## OVERVIEW

Defendant–Appellant Ernesto Merino–Balderrama appeals his conviction by an Idaho federal jury for possession of child pornography. He argues that the evidence was insufficient to support his conviction and that the district court abused its discretion by allowing the jury to watch several films depicting child pornography that were seized from the trunk of his car. For the reasons explained below, we reverse Merino–Balderrama's conviction and remand for a new trial.

## FACTS AND PRIOR PROCEEDINGS

On the night of November 11, 1996, an Idaho state trooper detained Ernesto Merino–Balderrama during a routine traffic stop in Idaho Falls, Idaho, and arrested him for driving without a valid license. When the officer inventoried the trunk's contents, he discovered an open briefcase containing pornographic materials. Most of the materials involved adults only, but a few items involved children. This physical evidence was turned over to the Federal Bureau of Investigation.

A few weeks later, FBI Special Agent Robert Long was assigned the case. Among the other pornographic materials, Long discovered fifteen items depicting child pornography. One magazine, entitled "Nudist Moppets," contained pornographic pictures involving children. Additionally, seven films depicted children engaged in explicit sexual conduct with adults and other children. Each of the seven films was boxed separately, and the cover of each box bore photographs of children engaged in sexual conduct. Closer examination revealed that those photographs were stills taken from the corresponding film.

Special Agent Long resolved to question Merino–Balderrama, who had returned to work after being released on the traffic violation. Because Long speaks only English, and because Merino–Balderrama is a Mexican national who speaks primarily Spanish,

Long enlisted the aid of Immigration and Naturalization Service Special Agent Alonzo Martinez, who speaks Spanish. Long and Martinez interviewed Merino–Balderrama in an office at his place of employment. In response to Long's questions, as translated by Martinez, Merino–Balderrama stated that he had found the briefcase containing the pornographic materials about four months earlier while cleaning a building on a farm in Blackfoot, Idaho.[1] He told the agents that he looked at the printed materials and that without success he tried to view the films by holding the film stock up to the light.

Merino–Balderrama then was rearrested and charged with possession of child pornography, a felony under 18 U.S.C. § 2252(a)(4)(B). During the jury trial, the government introduced into evidence fifteen of the items found in the trunk of the defendant's car during his November 11, 1996 arrest: The seven 8 millimeter films, the seven still photographs attached to the covers of the film boxes, and the magazine that contained child pornography.

The defendant did not object to the government's introduction of these items into evidence. He objected, however, when the government proposed to show the films to the jury. The defendant argued, as he does here on appeal, that screening the films for the jury was unfairly prejudicial under Rule 403 of the Federal Rules of Evidence. In light of his offer to stipulate to the two elements of § 2252 to which the films were most relevant, and because the record contained no evidence to show that he knew the films depicted child pornography, the defendant insisted that the films' potential for prejudice outweighed their probative value.

The district court overruled Merino–Balderrama's objection and commented that the government was not required to accept his offer to stipulate. Accordingly, the government refused to stipulate to any elements of the crime and was permitted to show the jury several minutes from each of six of the

---

1. Consistent with Merino–Balderrama's account, forensics experts discovered that the briefcase

carried a tag bearing the name "Cecil Johnson."

seven films.[2] Before allowing the government to screen the first film, the district court issued a brief cautionary instruction.

On May 14, 1997, the jury convicted the defendant, who currently is serving a fifteen-month sentence. The defendant timely appeals.

### Jurisdiction and Standard of Review

The district court had jurisdiction of the matter under 28 U.S.C. § 1331. We have jurisdiction of this appeal under 28 U.S.C. § 1291.

■■■ We review a district court's evidentiary rulings for abuse of discretion. *United States v. Crosby*, 75 F.3d 1343, 1346 (9th Cir.1996). Should a district court abuse its discretion by admitting unfairly prejudicial evidence, a conviction must be reversed if the error is not harmless and more probably than not affected the verdict. *United States v. Hernandez*, 109 F.3d 1450, 1453 (9th Cir. 1997).

### Merino–Balderrama's Appeal

#### A. The Government's Burden of Proof

■■■ To demonstrate a violation of the federal statute punishing sexual exploitation of children, the United States was required to prove three elements beyond a reasonable doubt. First, the government was required to prove that Merino–Balderrama knowingly possessed three or more books, magazines, periodicals, films, or other matter that involved the use of minors engaged in sexually-explicit conduct; second, that Merino–Balderrama *knew* that those materials depicted minors engaged in sexually-explicit conduct; and third, that the materials had been transported in interstate commerce. *See* 18 U.S.C. § 2252(a)(4)(B) (West 1998). The substantive scienter element of § 2252 contains two sub-parts. First, the government must show that the defendant knew that at least three of the materials portrayed sexually-explicit conduct and, second, that he knew that the materials depicted minors engaged in such conduct. *United States v. X-Cite-*

*ment Video, Inc.*, 513 U.S. 64, 78, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994). Obviously, when more than three such articles of child pornography are admitted into evidence against a defendant, a jury must find that at least three of those items *each* satisfy *all three* of the elements of the offense. *See* 18 U.S.C. § 2252(a)(4)(B).

#### B. Rule 403

At its heart, Merino–Balderrama's appeal raises an evidentiary issue: The defendant contends that the district court should not have permitted the government to show portions of the films to the jury. The defendant argues specifically that the films were less probative and more prejudicial than the evidentiary alternatives available to the government. He also advances several reasons why the resulting prejudice was neither fair nor harmless. These arguments are intertwined analytically but, for the sake of clarity, we consider each severally.

#### 1. Unfair Prejudice

"Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice ... or needless presentation of cumulative evidence." Fed.R.Evid. Rule 403. The Supreme Court has stated that the district courts should balance the probative value of a given evidentiary item against its prejudicial potential in the following way:

> On objection, the court would decide whether a particular item of evidence raised a danger of unfair prejudice. If it did, the judge would go on to evaluate the degrees of probative value and unfair prejudice not only for the item in question but for any actually available substitutes as well. If an alternative were found to have substantially the same or greater probative value but a lower danger of unfair prejudice, sound judicial discretion would discount the value of the item first offered and exclude it if its discounted probative

---

**2.** The government did not screen the seventh film because it was an exact duplicate of one of the

other six films.

value were substantially outweighed by unfairly prejudicial risk.

*Old Chief v. United States,* 519 U.S. 172, 117 S.Ct. 644, 651, 136 L.Ed.2d 574 (1997); *see* Advisory Committee's Notes on Fed. Rule Evid. 404, 28 U.S.C.App., p. 861. *Old Chief* held that a defendant's offer to stipulate to an element of a crime is relevant evidence that must be factored into a district court's analysis under Rule 403.[3] *See Old Chief,* 117 S.Ct. at 653.

■ We assess the district court's conduct in the light that *Old Chief* sheds upon Rule 403. We have no quarrel with the district court's assumption that showing the films to the jury risked unfair prejudice. But once the district court concluded that showing the films raised a danger of unfair prejudice, Rule 403 required it critically to "evaluate the degrees of probative value ... not only for the item in question but for any actually available substitutes as well." *Old Chief,* 117 S.Ct. at 651. The district court cut short its Rule 403 analysis before reaching this pivotal step.

■ After Merino–Balderrama offered to stipulate that the films were child pornography and had travelled in interstate commerce, his argument for excluding the films became persuasive, for both quantitative and qualitative reasons. Quantitatively, Merino–Balderrama's offer to stipulate added to the pool of available evidentiary alternatives, at least on the two elements that he was willing to concede. *See id.* at 653 (characterizing a proffered stipulation as "evidence").[4] Quali-tatively, Merino–Balderrama's proffered stipulation would have been *conclusive* on those two elements and therefore could have required the district court to exclude further evidence probative of those elements. *See Old Chief,* 117 S.Ct. at 653 (stating that a proffered admission is "not merely relevant but seemingly conclusive evidence of the element"); Advisory Committee's Notes on Fed. Rule Evid. 401, 29 U.S.C. App., p. 859 (noting that a party's concession sometimes "call[s] for the exclusion of evidence offered to prove [the] point conceded by the opponent ...").

■ With Merino–Balderrama's proffered stipulation in hand, the government would need to show only the defendant's scienter as to any three of the exhibits because the defendant would not stipulate to that element. Thus, under Rule 403, whether the district court should allow the jury to watch the films would turn on whether they were more probative of scienter-and only that element of the offense-relative to the other eight exhibits. If the films were less probative of scienter than the box covers, or if the two groups of exhibits were only equally probative of scienter, then keeping the films from the jury's eyes would not "deprive the prosecution of evidence with multiple utility." *Old Chief,* 117 S.Ct. at 655.

In this case, the films were less probative of scienter than were their box covers. We reach this conclusion because the government offered no direct or circumstantial evidence that Merino–Balderrama had knowl-

---

**3.** The Court stated that exclusion under Rule 403 "will be the general rule when proof of convict status is at issue." *Old Chief,* 117 S.Ct. at 655–56. Thus, *Old Chief*'s specific holding is limited to cases involving proof of felon status, *Id.* at 651 n. 7. But the Court also acknowledged that the admission of other kinds of evidence over a defendant's offer to stipulate to *other* elements of a crime could violate Rule 403. In those situations, the opposite generalization applies: "a defendant's Rule 403 objection offering to concede a point generally cannot prevail over the Government's choice to offer evidence." *Id.* at 651.

We interpret this language to mean that the content of a defendant's offer to stipulate only determines *which* of *Old Chief*'s general rules applies. In every case it will be our task to decide whether an *exception* justifies deviation from the pertinent rule. *Old Chief* provides only one analytical framework for determining whether exceptions to those rules exist. Thus, we must employ *Old Chief* whenever a defendant offers to stipulate to an element of the offense and raises a Rule 403 objection to the admission of evidence probative of that element.

**4.** The government could not have rendered Merino–Balderrama's stipulation "unavailable" simply by declining to accept the defendant's offer. Because this offer to stipulate was in essence an offer to admit that two of the three elements of § 2252 were satisfied, Merino–Balderrama's admission is evidence that the district court was required to weigh under Rule 403, whether or not the government chose to accept it. *See Old Chief,* 117 S.Ct. at 653; Fed. Rule Evid. Rule 801(d)(2)(A).

edge of the films' contents.[5] We emphasize that none of the government's testimony or evidence contradicts Merino–Balderrama's assertion that he was unable to discern the images on the film stock. Nor did the government prove scienter circumstantially. It is undisputed that Merino–Balderrama did not order the films; he stumbled upon them. The government concedes that Merino–Balderrama does not appear in the films and never contended that he otherwise was involved in their production. Without direct or circumstantial evidence of scienter, the films were less probative of that element than were their covers, which Merino–Balderrama undisputedly *did* see.[6] This fact would militate toward excluding the films.

Finally, the films possessed a greater potential for unfair prejudice than did their packaging. *See Old Chief,* 117 S.Ct. at 651 (stating that the district court must evaluate the degrees of "unfair prejudice not only for the item in question but for any actually available substitutes as well"). Allowing the jury to view more than ten minutes of film portraying children engaged in graphic sexu-

al conduct with other children and with adults is likely to be more inflammatory than seven still photographs and a magazine. Furthermore, the films raised a greater risk of *unfair* prejudice than did their packaging. Confronting a defendant with evidence that he has never seen, sought, or produced offends basic concepts of fairness.[7]

### 2. Harmless Error

■■■■ We conclude that showing the films to the jury was not harmless error. Where, as here, the district court's evidentiary ruling "significantly reduced any possibility that the jury would acquit" the defendant, the error is not harmless. *United States v. Moorehead,* 57 F.3d 875, 879 (9th Cir.1995). The government bears the burden of proving harmlessness. *See Hernandez,* 109 F.3d at 1453.

In this case, improperly screening the films for the jury likely created an emotional impact that influenced the verdict. Compounding the error, the prosecution made no fewer than ten references to the films during closing argument, including several specific

5. The government could have demonstrated knowledge in several ways. Obviously, the government might have shown that the defendant actually had seen those films, either through the defendant's own admissions or by way of other evidence. But the government also could have proven scienter through circumstantial evidence. For example, it is well-established that a prosecutor can show scienter by proving that the defendant actually sought out or solicited the films, sight-unseen, on the basis of some clear description or advertisement of what they depicted. *See United States v. Osborne,* 935 F.2d 32, 36 (4th Cir.1991) (holding that a defendant who placed a mail order for child pornography possessed scienter, even if the package was delivered to someone else); *United States v. Brown,* 862 F.2d 1033, 1036 (3rd. Cir.1988) (holding that a defendant who ordered child pornography by mail possessed scienter, even if by mistake he received a different child pornography videotape than the one he had requested). Alternatively, scienter may be manifest where the defendant is among the actors depicted in the materials he possessed. *See United States v. Thomas,* 893 F.2d 1066, 1068 (9th Cir.1990) (finding scienter where photographs in the defendant's possession portrayed him sexually engaged with a child). Finally, the government can prove scienter by showing that the defendant helped produce the visual depictions. *See United States v. Smith,* 795 F.2d

841, 844 (9th Cir.1986) (finding scienter where the defendant was the photographer).

6. The government insists that from the box covers themselves the jury could infer that Merino–Balderrama knew what the films contained. But such an inference alone-without additional direct or circumstantial evidence of scienter-makes the probative value of those films completely dependent upon that of the box covers. For that reason, and because the box covers portrayed still photographs taken directly from the films, at most the films could be *no more* probative of scienter than those covers.

7. We reject the government's argument that, notwithstanding the unfair prejudice to Merino–Balderrama, the need for "evidentiary richness and narrative integrity" entitled the prosecution to screen portions of the films for the jury. *Old Chief,* 117 S.Ct. at 650. To be sure, *Old Chief* cautions courts to think twice about excluding evidence on the basis of a defendant's stipulation where such exclusion would effect "a break in the natural sequence of narrative evidence." *Id.* at 654. But the government's argument turns *Old Chief* on its head. As we have said, the government presented no evidence that the defendant had seen or otherwise knew that the films depicted child pornography. In this circumstance, showing the films to the jury is *inconsistent* with the uncontroverted narrative.

references to images that the jury had seen in the films. This emphasis on unfairly prejudicial evidence militates against a finding of harmless error. *See Hynes v. Coughlin,* 79 F.3d 285, 291 (2d Cir.1996) (holding that harmless error was inapplicable where a prosecutor repeatedly emphasized improper evidence to the jury) (*citing Chapman v. California,* 386 U.S. 18, 25, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). Moreover, showing these films invited the jury "to infer [the defendant's] knowledge upon a very inadequate basis." *United States v. Shannon,* 137 F.3d 1112, 1119 (9th Cir.1998). Accordingly, we hold that the government has not demonstrated that the error was harmless "more probably than not." *Hernandez,* 109 F.3d at 1453.

The government argues, however, that the district court's cautionary instruction provided sufficient guidance as to the weight the jury could give the films and therefore "cured" the prejudice. "A timely instruction from the judge usually cures the prejudicial impact of evidence unless it is highly prejudicial or the instruction is clearly inadequate." *Bayramoglu v. Estelle,* 806 F.2d 880, 888 (9th Cir.1986) (quoting *United States v. Berry,* 627 F.2d 193, 198 (9th Cir.1980)).

We hold that the district court's instruction did not cure the films' prejudicial effect. That instruction, which the court read to the jury before the government screened the films, stated:

> You are about to view certain films by way of a film projector. At issue in this case is whether the defendant had knowledge of its contents. Thus, a further issue in this case is whether the defendant viewed the films and if so, under what circumstances and by what means. By permitting the films to be shown in this particular manner, the court does not mean to suggest that the defendant saw the films by this or by any other means. That is for you to determine from all of the evidence presented.

As we already have stated, the films' content was highly prejudicial. Furthermore, the instruction was inadequate on its face. The instruction did not tell the jury how *its* [FIC] viewing the films would assist it to determine

whether *the defendant* viewed them or otherwise knew that they depicted child pornography. Nor did the district court advise the jury to disregard the films if-as occurred here-the government ultimately failed to prove that Merino–Balderrama knew what they depicted. For these reasons, we hold that the district court's instruction did not render harmless the jury's viewing of the films.

## CONCLUSION

For the reasons stated above, we vacate Merino–Balderrama's conviction and remand for a new trial. Because we decide this appeal on an evidentiary issue, we need not and do not consider Merino–Balderrama's alternative argument that the evidence was insufficient to support his conviction.

REVERSED AND REMANDED.