**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**David Daniel Thomas WILKERSON,
Defendant–Appellant.**

**No. 98–50504.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 5, 1999.

Filed April 3, 2000

---

Michael Tanaka, Deputy Federal Public Defender, Los Angeles, California, for defendant-appellant David Daniel Thomas Wilkerson.

George S. Cardona, Assistant United States Attorney, and Carole C. Peterson, Assistant United States Attorney, Los Angeles, California, for plaintiff-appellee the United States of America.

Before: FLETCHER, D. W. NELSON, and BRUNETTI, Circuit Judges.

Opinion by Judge D.W. NELSON; Dissent by FLETCHER.

D.W. NELSON, Circuit Judge:

David Daniel Thomas Wilkerson appeals his conviction by conditional guilty plea to one count of armed bank robbery under 18 U.S.C. § 2113(a)(d) and one count for use or carrying of a firearm during the commission of a crime of violence under 18 U.S.C. § 924(c).

## I. *Factual and Procedural Background*

The charges stem from an incident where appellant Wilkerson, along with two co-defendants, stole a vehicle and then robbed the Edwards Federal Credit Union in Lancaster, California on December 16, 1997. On December 31, 1997, law enforcement officers interviewed Wilkerson, who confessed his role in the robbery, and admitted to carrying a gun during the offense.

Wilkerson was originally charged on January 20, 1998, with one co-defendant, under a two-count indictment consisting of one count of conspiracy in violation of 18 U.S.C. § 371 and one count of armed robbery of a federal credit union in violation of 18 U.S.C. § 2113(a)(d). A superseding indictment was filed shortly thereafter, charging all three of the alleged co-conspirators with the two counts set forth in the original indictment. On March 6, 1998, the government filed a second superseding indictment, which also added a charge for using or carrying a firearm during a crime of violence in violation of 18 U.S.C. § 924(c). Count one charged Wilkerson and two co-defendants with conspiring to commit a robbery of a federal credit union, in violation of 18 U.S.C. § 371.

Count two charged the defendants with armed robbery of a credit union, in violation of 18 U.S.C. § 2113(a)(d). Count three charged the defendants with using or carrying a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c).

The § 924(c) charge was added after Judge Keller criticized the government's initial failure to charge Wilkerson for carrying a weapon during the robbery's commission. Though he admitted carrying a gun, Wilkerson was initially only charged for armed robbery and conspiracy. At an initial status conference on February 17, 1998, after ascertaining the basic facts of the case, the following colloquy took place in which Judge Keller noted the omission:

> The Court: Do you have a gun count in here?
>
> The government: I'm sorry?
>
> The Court: Why don't you have a 924(c)? I'm just curious, from a charging standpoint.
>
> The government: Your honor, at this point the guns were not recovered.
>
> The Court: So what? That leads me to the example of somebody, you know, I'm just going to rob banks next to a lake or next to the ocean, and when I get through, there goes that gun in the lake, there it goes in the ocean, and the government is not going to charge me with a 924(c), because we didn't recover the gun. And the answer is, so what? You're not telling me you try drugs cases without drugs, don't you?
>
> The government: That's true, your honor.
>
> The Court: Okay. So you are telling me you don't try gun cases without guns?
>
> The Court: I'm going to tell you something. Do you see the inconsistency?
>
> The government: Yes, your Honor.
>
> The Court: There is a major inconsistency there.

A bit later in the conference, the Court commented on the government's failure to include the § 924(c) charge, referring to the omission as "absurd" and "asinine," and told him to "[s]hare that with your head of [the] criminal [division]."

On March 13, 1998, Wilkerson filed a formal motion to recuse Judge Keller, claiming that Judge Keller's asserted displeasure with the government for initially omitting the charge rendered Judge Keller biased and unable to be impartial. The motion was referred to Judge Byrne, who denied it on March 16, 1998, stating that Wilkerson failed to make the requisite factual showing of bias.

Wilkerson also filed a motion to dismiss the § 924(c) charge, contending that Judge Keller had essentially forced the government to file the charge. This motion was also denied by Judge Keller on March 16, 1998. That same day, Wilkerson reached a plea agreement, and eventually pled guilty to the armed robbery and gun charges, but expressly reserved his right to appeal the denied recusal and dismissal of charge motions. He was subsequently sentenced to 63 months for the armed robbery count and to 60 months for the gun charge to be followed by five years of supervised release. Wilkerson now appeals both the denial of recusal and the motions to dismiss. After a careful review of the entire record, we affirm the district court's denial of Wilkerson's motion for recusal and to dismiss the § 924(c) count.

## II. *Discussion*

 We review a district court's decision whether to grant a motion for recusal for an abuse of discretion. *United States v. Hernandez,* 109 F.3d 1450, 1453 (9th Cir.1997). We also review a motion to dismiss an indictment to preserve judicial integrity under the same standard, as it is an exercise of the district court's supervisory powers. *United States v. Garza–Juarez,* 992 F.2d 896, 905 (9th Cir.1993).

 28 U.S.C. § 455(a) states that "[a]ny justice, judge or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." "[R]emarks in a judicial context [must] demonstrate such pervasive bias and prejudice that [they] constitute[ ] bias against a party." *King v. United States Dist. Court,* 16 F.3d 992, 993 (9th Cir.1994). The test is "whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *Hernandez,* 109 F.3d at 1453, quoting *United States v. Studley,* 783 F.2d 934, 939 (9th Cir.1986). Applying the standard set forth in *Hernandez,* we do not find that Judge Keller's inquiry rose to the level required for recusal under 28 U.S.C. § 455(a), particularly in light of Wilkerson's own admission that he carried a weapon during the robbery. "A judge's views on legal issues may not serve as the basis for motions to disqualify." *United States v. Conforte,* 624 F.2d 869, 882 (9th Cir.1980). *See also United States v. Bauer,* 84 F.3d 1549, 1560 (9th Cir.1996).

 Wilkerson maintains that the district court improperly inserted itself in the government's charging decisions and violated the separation of powers doctrine. Our review of the record indicates that Wilkerson has failed to demonstrate that the trial court's behavior was so extreme so as to display a "clear inability to render fair judgment." *Liteky v. United States,* 510 U.S. 540, 551, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). "[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings ... do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* at 555, 114 S.Ct. 1147. While Judge Keller's commentary focused on the potential logical inconsistency of charging one but not both offenses, it did not reveal such a high degree of favoritism or antagonism as to make fair

judgment impossible. *Liteky* notes that "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men ... sometimes display" ordinarily fail to establish bias or partiality. *Id.* *See also United States v. Monaco,* 852 F.2d 1143, 1147 (9th Cir.1988) (comments by judge reflecting outrage at crime and failure of parties to take responsibility did not demonstrate pervasive bias); *Yagman v. Republic Ins.,* 987 F.2d 622, 626 (9th Cir.1993)(recusal not required even though judge and lawyer "clashed" repeatedly); and *Noli v. C.I.R.,* 860 F.2d 1521, 1528 (9th Cir.1988) (comments by judge revealing that he was upset with a party's conduct did not require recusal). *See also United States v. Frias–Ramirez,* 670 F.2d 849, 853 n. 6 (9th Cir.), *cert. denied,* 459 U.S. 842, 103 S.Ct. 94, 74 L.Ed.2d 86 (1982) ("Parties cannot attack a judge's impartiality on the basis of information and beliefs acquired while acting in his or her judicial capacity."). The undisputed evidence supported the judge's inquiry.

Nor do we find that Judge Keller invaded the government's province in this case. While it may be true that "courts should be wary of second-guessing prosecutorial choices," *United States v. Miller,* 722 F.2d 562, 565 (9th Cir.1983), the record demonstrates that Judge Keller explicitly recognized that charging decisions are within the government's purview when he inquired about the reasons for the omission of the § 924(c) charge. Indeed, Judge Keller also inquired about the government's failure to charge the defendants with a carjacking count, but the government never added one. At no point did he force, require or coerce the government to file a § 924(c) charge. Moreover, at the initial status conference, Judge Keller repeatedly emphasized to the defendants that he was not the fact finder or the prosecutor, noting that the defendants had "every right to go to trial and have a jury determine this."

Indeed, the record reveals that Judge Keller also engaged in a similarly inquisitive colloquy with the defense at the initial status conference, thereby discounting the possibility that he was biased towards one side or the other. Instead of actively invading the prosecutor's discretion, the record shows that Judge Keller was remarking on potential charges the government may have overlooked, in the same way that he pressured the defendants to utilize every possible pretrial strategy to their advantage. *See Gonzales v. Parks,* 830 F.2d 1033, 1037 (9th Cir.1987). ("There is nothing inherently improper about a suggestion by a judge that a party should file a particular motion [for summary judgment]."). Similarly, a judge who expresses doubts about the merits of a particular case is not delinquent. *Noli,* 860 F.2d at 1527. While Judge Keller's commentary may have demonstrated an active, perhaps abrasive engagement with each side's case, it cannot be characterized as so partial or biased to warrant reversal. "Cutting comments to counsel, particularly those relating to skill rather than good faith or integrity, will not generally mandate reversal." *Pau v. Yosemite Park and Curry Co.,* 928 F.2d 880, 885 (9th Cir.1991).

We respectfully disagree with the dissent's conclusion that the trial court invaded the separation of powers between the executive and judicial branches. The dissent's position understates the governance of the *Hernandez* standard, and overstates the concern for separation of powers. We cannot carve a statutory violation from policy concerns alone. It may be true that prosecutorial decisions are rarely reviewed by courts, *see United States v. Armstrong,* 517 U.S. 456, 464, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996), but we do not think that this case can be characterized as an invasion of this sacred province. The carriage of a gun during the commission of the crime was *not at issue,* and the trial court's commentary correctly exposed the logical inconsistency present in failing to charge for an already admitted offense.

■ The dissent erroneously conflates a judge's asserted displeasure with "assuming the role of prosecutor." The two are not the same. While the former is acceptable, the latter is not. The mere expression of displeasure with a prosecutor's charging decisions does not, by itself, constitute an invasion of the separation of powers. From the facts before us, something more coercive is needed before a judge's behavior rises to the level of an invasion. Here, we remain convinced that Judge Keller was involved in ensuring that each side put forth its most comprehensive case. The fact that the gun was an undisputed element of the crime's commission made it understandable that Judge Keller would ask, and perhaps comment upon, the omission of a § 924(c) charge.

■ Similarly, the court's commentary on his role as "represent[ing] the community" and that the community was "tired" of armed robbery and guns does not demonstrate the kind of "truly extreme" remarks that are required for recusal. *See United States v. Borrero–Isaza*, 887 F.2d 1349, 1357 (9th Cir.1989) ("[t]he fact that a judge has strong feelings on a particular crime does not automatically disqualify him from sentencing those who have committed that crime"); *United States v. Nelson*, 718 F.2d 315, 321 (9th Cir.1983)(court's belief that defendant was guilty did not disqualify him from presiding over retrial); *United States v. Allen*, 633 F.2d 1282, 1294 (9th Cir.1980)(statement that importing marijuana was "a very serious crime that had a 'cancer'-like effect on society" was "nowhere near the sort of apparent ethnic, political, or personal animus" warranting recusal). To disqualify a judge, the alleged bias must constitute "animus more active and deeprooted than an attitude of disapproval toward certain persons because of their known conduct." *Conforte*, 624 F.2d at 881. If the district court's behavior does

not rise to the level required by *Hernandez* and *Liteky*, then it cannot be said that the provision was violated.

■ We conclude, based upon the record before us, that Wilkerson has failed to demonstrate that Judges William D. Keller and William M. Byrne abused their discretion in denying Wilkerson's motions to recuse Judge Keller and to dismiss the 18 U.S.C. § 924(c) charge.

AFFIRMED.

FLETCHER, Circuit Judge, dissenting:

I respectfully dissent. I would vacate the defendant's plea agreement and sentence and would remand, allowing the United States Attorney to re-indict and reconsider what charges to bring without the judge's Sword of Damocles hanging over him. This necessarily would require also disqualifying the judge.

There is a fundamental principle at issue. The structural constitutional requirement that separation of powers be carefully maintained has been violated in this case. As the Supreme Court explained in *United States v. Armstrong*, 517 U.S. 456, 464, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996), prosecutorial decisions are rarely reviewed by courts because such a review:

asks a court to exercise judicial power over a "special province" of the Executive. The Attorney General and United States Attorneys retain "broad discretion" to enforce the Nation's criminal laws. They have this latitude because they are designated by statute as the President's delegates to help him discharge his constitutional responsibility to "take Care that the Laws be faithfully executed." As a result, "[t]he presumption of regularity supports" their prosecutorial decisions ... (citations omitted)

The need to protect the prosecutor's discretion has resulted in strict rules on selective prosecution claims[1] and limits on

1. *See., e.g., United States v. Armstrong*, 517 U.S. 456, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996) (entitlement to discovery under a se-

lective prosecution claim arises only after defendant makes a threshold showing that the

the judicial review of and participation in plea-bargaining.[2] Prosecutors are afforded broad discretion over decisions to investigate,[3] to allow plea bargaining,[4] to determine whether to bring charges,[5] and to decide what charges to bring.[6]

In this case, the district judge asked pointed questions about why the defendant had not been charged with a specific offense. The government then offered a reasoned explanation as to why it had not included a gun charge in the indictment (that the guns had not been recovered). The judge continued to press the issue, literally brow-beating the prosecutor, calling the government's policy "absurd" and "asinine," and instructing the prosecutor to "[s]hare that with your head of Criminal." Reporter's Transcript at 9, Feb. 17, 1998. Toward the end of the status conference, the judge explained how he saw his role in the charging process:

> The last case I had that somebody raised havoc with me on the—the defendant did—that I was all over the prosecutor. But you know, as the judge, I think I do have some role to protect society. And if I think the prosecutor is doing an abysmal job, I do believe I'm able to comment on it. I'm not going to go pick the phone up, as some judges have in days gone by, call the head of the Criminal Division and say, "Hey, head of the Criminal Division, I want to tell you about your people." I don't make it a practice to do that. Instead, I tell you right here, and you're not doing the job, in my view.

*Id.* at 40.

In a subsequent conference, after the government had brought in a superseding indictment adding an 18 U.S.C. § 924(c) count, the judge again explained his view of his role as "represent[ing] the community," and that in this role he has observed that "We're tired of armed bank robbery. We're tired of guns. We don't want them anymore; do you understand me? No more guns." Reporter's Transcript at 10, March 9, 1998. He added:

> Now, when the prosecutor files a charge, which charge was set forth here, which implicates guns, but does not in my view, track the will of Congress; namely, when you're charging guns, you charge 924(c) also, you're charging a(d)—2113(d) count, you charged a 924(c). When they don't do it, and they do it with some frequency, I'll tell you, when they don't do it, I want to know why they are not doing it. You're doggone right ... I'm not backing off; okay? That's my job ...
>
> I only wish the prosecutor's office had enough sense to charge appropriately. Then I don't have to get involved. I would just like to sit back here....

government has failed to prosecute similarly situated suspects of other races).

**2.** In *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), the Court held that there was no due process violation when the prosecutor threatened to indict the defendant on more serious charges if a guilty plea was not forthcoming. Discussing its reasoning, the Court noted that "[I]n our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Id.* at 364, 98 S.Ct. 663.

**3.** *See, e.g., United States v. Martinez*, 785 F.2d 663, 670 (9th Cir.1986) (court's review of

claim of prosecutorial vindictiveness necessarily limited).

**4.** *See, e.g., United States v. Sustaita*, 1 F.3d 950, 952 (9th Cir.1993) (decision to allow or preclude plea bargain within prosecutor's discretion).

**5.** *See, e.g., United States v. Williams*, 504 U.S. 36, 48, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992) (prosecutor's ability to seek indictment from grand jury is independent of any judicial authorization).

**6.** *See, e.g., Hunter v. United States*, 73 F.3d 260, 262 (9th Cir.1996) (per curiam) (when more than one statute proscribes the conduct at issue, choice of charges is left to prosecutor's discretion).

Just sit here and rule on motions. Rule on the evidence. Rule on the instructions, and not say one thing. I earnestly believe that it is my job to look at the charges and to say, if there is a failing, what's going on here ...

And if a Court just sits here when a prosecutor, to my way of thinking, mindlessly charges a 2113(d), and only that, if a judge just sits here, that judge, in my view, unequivocally is not doing his job. Just hang it up, judge. Because if you are that passive, then you shouldn't be in that position. That's my view.

*Id.* at 10–13.

This case puts the appellate court in an awkward position. We play a very limited supervisory role over the conduct of district court judges. I am acutely aware of our limitations. However, my review of the record persuades me that no measures short of what I recommend in this case can maintain the integrity of our system of justice and preserve the constitutionally required separation of powers.

The majority focuses principally on whether the judge was biased, but that is not where the principal focus should be.[7] The judge assumed the role of prosecutor. He several times stated unequivocally that his role—his job—was to see that the prosecutor charged properly, that it was necessary for *him*—the judge—to do so to "protect the community."

---

**7.** The majority rationalizes that because the judge "engaged in a similarly inquisitive colloquy with the defense at the initial status conference," (Maj. Op. at 796), this proved he was not biased toward one side or the other. Exercising his duty to protect the constitutional rights of the defendant, I suggest, is not only proper but required. It is not, however, proper for the judge to assume the role of prosecutor.