**UNITED STATES of America, Plaintiff—Appellee,**

v.

**Steven L. UPDIKE, Defendant— Appellant.**

No. 02–50045.

D.C. No. CR–00–01246–FMC.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 8, 2002.

Decided Nov. 14, 2002.

Before CANBY, GOULD and BERZON, Circuit Judges.

## MEMORANDUM *

Updike appeals the district court's refusal to dismiss the indictment against him after the government lost potentially exculpatory evidence. We affirm. Because the facts are familiar to the parties, we recount them only as necessary to explain our decision.

Whether Updike's due process rights were violated is subject to *de novo* review. *United States v. Patterson,* 292 F.3d 615, 626 (9th Cir.2002). Factual findings, however, such as the presence or absence of bad faith, are reviewed for clear error. *United States v. Hernandez,* 109 F.3d 1450, 1454 (9th Cir.1997) (underlying factual findings reviewed for clear error); *United States v. Bohl,* 25 F.3d 904, 909 (10th Cir.1994) (bad faith is primarily a factual question of intent).

1. During its investigation of Updike, the government lost three original documents relevant to the investigation: two handwritten notes purportedly written by Joseph Alexander authorizing Updike to retrieve Alexander's mail, and a small purple post-it note containing Updike's cell phone number as well as various information about Alexander. The loss of the three original documents was not a due process violation under the principles announced in *Arizona v. Youngblood,* 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988).

The destroyed documents may have had some potential exculpatory value. Updike intended to do a handwriting analysis of the three documents. That handwriting analysis may have allowed Updike to impeach government witnesses on various

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

disputed collateral issues in the case, thereby bolstering in the jurors' minds Updike's version of events. Although the government preserved photocopies of each of the documents, Updike's handwriting expert was unable to make a conclusive handwriting determination without the originals.

To demonstrate a due process violation when the government destroys potentially exculpatory evidence, however, it is not enough to show that the lost evidence had some potential exculpatory value. The defendant must also demonstrate a lack of other evidence sufficient to establish the same point, and show that the government acted in bad faith in destroying or losing the evidence. *Youngblood,* 488 U.S. at 58; *Hernandez,* 109 F.3d at 1454. Because we conclude that the district court's determination that the government did not act in bad faith when it lost the original documents was not clearly erroneous, we do not address whether Updike had access to other comparable evidence.

There is no evidence that the original documents were "deliberately [lost] to deprive petitioner of access to relevant evidence." *Featherstone v. Estelle,* 948 F.2d 1497, 1505 (9th Cir.1991). Nor is this a case where the exculpatory value of the evidence is so obvious that bad faith can be inferred from the very fact of destruction. *Cf. United States v. Cooper,* 983 F.2d 928, 931 (9th Cir.1993) (bad faith analysis "dovetails" with the question of whether the evidence had apparent exculpatory value). Although Updike's statements, during his arrest interview, put the government agents on notice that Updike believed at least some of the documents had exculpatory value, it is not clear that the agents knew that this exculpatory value was tied to a handwriting analysis.

Moreover, any potential exculpatory value that could have been provided by a handwriting analysis was in fact slight. Although the handwriting analysis would have allowed Updike to impeach government witnesses on collateral issues, nothing in the handwriting analysis was directly relevant to the central issue in the case: whether Updike had Alexander's permission to use Alexander's credit cards.

In short, there is no indication that the agents knew that the *original* documents, as opposed to the copies that they preserved, had significant exculpatory value. There is therefore no basis for an inference from the loss of the evidence alone that the destruction was in bad faith.

2. The district court did not clearly err in concluding that, although the initial document loss was not the result of bad faith conduct, the government subsequently acted in bad faith by making certain statements regarding the lost evidence. In particular, after losing the purple post-it note with Updike's cell phone number on it, the government contended that the photocopy of the post-it note (which did remain in evidence) was actually a photocopy of a different document. These statements, if believed, would have deprived Updike of all of the evidentiary value of the purple post-it note. The reasons stated by the district court are sufficient grounds for concluding that the government's statements were both unbelievable and in bad faith.

3. Because no destruction of evidence was at stake, the bad faith statements do not constitute a *Youngblood* violation. We therefore do not decide whether dismissal is the only appropriate sanction for a *Youngblood* violation, as Updike urges.

As to the bad faith statements themselves, the district court could have completely negated any prejudice caused by those false statements through appropriate jury instructions or by prohibiting the gov-

ernment from offering such testimony at trial. Dismissing an indictment based on government misconduct is powerful medicine, and should be used only where less drastic alternatives are not available. *United States v. Kearns,* 5 F.3d 1251, 1254 (9th Cir.1993). *See also, United States v. Morrison,* 449 U.S. 361, 364–365, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981) (sanctions should be tailored to remedy constitutional violation without unnecessarily infringing on competing interests). Although we hardly approve of the government's conduct, this is not a case where government bad faith conduct deprived the defendant of "weighty, exculpatory evidence" such that dismissal of the indictment is required. *Compare Cooper,* 983 F.2d at 933 (dismissing indictment).

■ Because dismissal of the indictment is the only remedy urged by Updike, and the only remedy which would relieve him of his guilty plea, we need not and do not consider whether the particular remedy fashioned by the district court was, in fact, adequate to cure any government misconduct. Rather, we merely note that a remedy short of dismissal of the indictment was appropriate.

For the reasons stated herein, the district court's refusal to dismiss the indictment against Updike is AFFIRMED.

* This panel unanimously finds this case suitable for decision without oral argument. See