**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

DEC 21 2016

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.   14-10561 |
| Plaintiff-Appellee, | D.C. No. |
| v. | 5:12-cr-00410-RMW-1 |
| MELVIN RUSSELL "RUSTY" SHIELDS, | MEMORANDUM* |
| Defendant-Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.   14-10562 |
| Plaintiff-Appellee, | D.C. No. |
| v. | 5:12-cr-00410-RMW-2 |
| MICHAEL SIMS, | |
| Defendant-Appellant. | |

Appeals from the United States District Court
for the Northern District of California
Ronald M. Whyte, District Judge, Presiding

Argued and Submitted October 20, 2016
San Francisco, California

---

\*     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before: A. WALLACE TASHIMA and MILAN D. SMITH, JR., Circuit Judges, and EDWARD R. KORMAN,[*] Senior District Judge.

A portion of the decision in this case is addressed in a published opinion filed concurrently with this memorandum disposition. Inasmuch as the parties are familiar with the facts, we do not refer to them except as necessary to explain our decision.

**I.** Sims argues that it was error for the district court not to sever the defendants' trials. There is a "well-established . . . preference for joint trials where defendants have been jointly indicted." *United States v. Hernandez-Orellana*, 539 F.3d 994, 1001–02 (9th Cir. 2008). However, a court *may* sever a joint trial if joinder "appears to prejudice a defendant," Federal Rule of Criminal Procedure 14(a), and reversal may be required where the defendant "show[s] that joinder was so manifestly prejudicial as to require [severance]." *United States v. Tootick*, 952 F.2d 1078, 1080 (9th Cir. 1991) (internal quotation marks omitted).

Shields argues that Sims' and his defenses were mutually exclusive because Sims accused Shields of committing fraud. "To warrant severance on the basis of . . . irreconcilable and mutually exclusive [defenses]," defendants must show that "acquittal of one codefendant would necessarily call for the conviction of the other." *United States v. Angwin*, 271 F.3d 786, 795 (9th Cir. 2001), *overruled on*

---

[*] The Honorable Edward R. Korman, Senior United States District Judge for the Eastern District of New York, sitting by designation.

2

*other grounds by United States v. Lopez*, 484 F.3d 1186 (9th Cir. 2007). It is insufficient to show that the defenses were merely antagonistic, or that "one defendant [desired] to exculpate himself by inculpating a codefendant." *United States v. Throckmorton*, 87 F.3d 1069, 1072 (9th Cir. 1996). Defendants' defenses were not mutually exclusive because they both argued that they were innocent, and the jury could have believed that both were acting in good faith, and acquitted them both. While the jury may have acquitted Sims and convicted Shields if it believed *every aspect* of Sims' defense, Shields' guilt was not the core of Sims' defense; Sims' innocence was.

Shields also argues that the "spillover" effect of evidence "that [was] probative of [Shields'] guilt but technically admissible only against [Sims]" warranted severance. *Zafiro v. United States*, 506 U.S. 534, 539 (1993). However, because proper jury instructions generally cure the risk of prejudice in joint trials, "[a] defendant seeking severance based on the 'spillover' effect of evidence admitted against a co-defendant must also demonstrate the insufficiency of limiting instructions given by the judge." *United States v. Nelson*, 137 F.3d 1094, 1108 (9th Cir. 1998). Shields acknowledges that limiting instructions were given whenever the evidence he challenges was admitted, and does not dispute the adequacy of the instructions.

**II.**     Pre-trial, the district court denied the defendants' motion to exclude evidence of Shields' and Sims' personal bankruptcies.  Defendants argue that the evidence should not have been admitted because (1) it was not relevant to the charges, (2) it was unfairly prejudicial under Federal Rule of Evidence 403, and (3) it was improperly introduced as character evidence under Federal Rule of Evidence 404(b).  None of these challenges has merit.

First, the evidence was relevant because it was admitted to support the claim that defendants falsely represented themselves as accomplished businessmen with long histories of success, in order to convince investors to trust S3 with their money.

Second, the evidence was not *unfairly* prejudicial under Rule 403.  Pursuant to the Rule, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury."  Rule 403 is concerned with *unfairly* prejudicial evidence; i.e., evidence that "has an undue tendency to suggest a decision on an improper basis such as emotion or character rather than evidence presented on the crime charged." *United States v. Joetzki*, 952 F.2d 1090, 1094 (9th Cir. 1991).  Here, the evidence was directly relevant to the claim that defendants inaccurately portrayed their financial histories, and it was not so inflammatory that the juror's minds would be unduly clouded with emotion.

4

Third, the evidence was *not* admitted as Rule 404(b) character evidence. When the court concluded that the evidence could be admitted, it first stated that it was "inclined to think that [the bankruptcies] do come in under 404(b)." However, after defense counsel objected, the court stated that it was "probably true [that the evidence was] not 404(b) technically," and it was admitted because defendants "represent[ed] that they had [] rosy or favorable financial histories." Thus, the court admitted the evidence because it was relevant to the allegation that defendants fraudulently portrayed their histories.

**III.** Sims argues that the court abused its discretion by admitting hearsay evidence that was prejudicial to him, and admissible for its truth only as to Shields. Sims cites *United States v. Sauza-Martinez*, 217 F.3d 754, 759–60 (9th Cir. 2000), for the proposition that admitting such evidence is plain error, but fails to note that in *Suaza-Martinez* we identified the error as "the district court's *failure to give a limiting instruction*," not the admission of the evidence itself. *Id.* at 758 (emphasis added). Here, timely limiting instructions were given for all challenged evidence. While a timely limiting instruction from the court typically "cures the prejudicial impact of evidence," the instruction may not be enough when (1) "the instruction is clearly inadequate," or (2) the evidence "is highly prejudicial." *United States v. Merino-Balderrama*, 146 F.3d 758, 764 (9th Cir. 1998).

5

The instructions were not clearly inadequate. Sims argues that the limiting instructions for Exhibit 737 were inadequate because the court admitted the exhibit not for its truth, but for "what Mr. Shields knew and understood." He submits that for the jury to follow the instructions, it would have to find that Shields "knew" the allegations in the email, and thus the jury would have to believe that the allegations were true, so it was actually admitted for its truth. This logic is faulty: whether something is true is distinct from whether a person has knowledge or understanding of it. Sims also argues that the district court's general explanation of hearsay was inadequate because, on the few pages of the trial transcript that Sims cites, the court failed to say that the hearsay could not be considered as substantive evidence of guilt. However, the limits on hearsay were made clear by the district court immediately before and after the pages that Sims cites, and elsewhere during the trial.

The three email exhibits that Shields challenges were not unfairly prejudicial. One email accuses Sims of taking action that Sims directly admitted to at trial. Another accuses Sims of having knowledge of an S3 transaction, when Sims was acquitted of all counts related to that transaction. The third accuses Sims of nothing more than being involved with S3, which is undisputed.

**IV.** Defendants have a due process right to be present at any critical stage of a criminal proceeding; i.e., a stage "where substantial rights of a criminal

6

accused may be affected." *Hovey v. Ayers*, 458 F.3d 892, 901 (9th Cir. 2006). Shields argues that he was denied this right when he was not present at two pretrial conferences between the court and counsel, at which government funding and a possible continuance of the trial were discussed. Shields validly waived his right to be present at these conferences, and the district court accepted his waiver. Thus, this claim fails.

V.     Shields also argues that he was the victim of ineffective assistance of counsel. "[W]e ordinarily do not review ineffective assistance of counsel claims on direct appeal." *Id.* Shields argues that his claim fits into one of the "extraordinary exceptions" to that rule: "the record on appeal is sufficiently developed to permit determination of the issue." *United States v. Jeronimo*, 398 F.3d 1149, 1156 (9th Cir. 2005). His claim is based on his counsel's decision to not review a juror note given to the court during trial that apparently contained comments that were not complimentary of counsel. Shields argues that the note could have supported juror recusal or a mistrial, but without knowing the contents of the note, it is impossible to know if this was possible, or if Shields suffered any prejudice. Moreover, we have every reason to believe that the contents of the note would *not* support recusal or mistrial, as the court reviewed the note, indicated that it did not contain evidence of bias or a violation, and advised that Shields not read it. Accordingly, the record is not sufficiently developed and we dismiss this claim.

**VI.** Defendants challenge the sufficiency of the evidence on several counts. "Evidence is sufficient to support a conviction unless, viewing the evidence in the light most favorable to sustaining the verdict, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Green*, 592 F.3d 1057, 1065 (9th Cir. 2010). Defendants focus on highlighting evidence favorable to them, or on arguing that evidence against them supports different inferences, but it is not our task to "ask whether a finder of fact could have construed the evidence produced at trial to support acquittal." *United States v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010).

Shields contests the sufficiency of the evidence on Counts 2, 3, 6, 8, 16, 17, and 36, arguing that there was insufficient evidence that he engaged in a scheme to defraud, had the intent to defraud, or made fraudulent statements or omissions. A rational jury could conclude that the challenged counts were supported by the fact that investors' funds were solicited for specific projects, when Shields (the primary S3 money manager) knew and intended that the funds would be used for other purposes. The record supports that investors were led to believe that they were investing in specific S3 projects, and investors wired money directly to LLCs associated with individual projects, but the S3 partners transferred the funds to other accounts and used the funds for other purposes.

Shields next argues that Counts 16 and 17 are not supported by sufficient evidence because the relevant emails were sent by Stafford to Stagecoach investors after Shields' relationship with Stafford has soured, negating Shields' liability as a co-conspirator. However, while there may be evidence of problems between Shields and Stafford, a jury could reasonably conclude that Shields had not withdrawn from the conspiracy. Further, Shields was copied on the emails, and did not disavow their contents, so investors could reasonably construe the emails as coming from the S3 Stagecoach project, rather than Stafford individually.

Sims contests the sufficiency of the evidence on Counts 8 and 12, which both concern investments made by Mr. and Mrs. Kaanapu. While Sims points to evidence supporting the inference that he acted in good faith, viewing the evidence in the light most favorable to the verdict we cannot conclude that no rational jury would convict.

Regarding Count 8, the record supports that Sims knew that S3 was in deep financial trouble before recruiting the Kaanapus to invest in Alafia. Sims affirmed to the Kaanapus the accuracy of a misleading Alafia brochure, stated that investors were guaranteed a 15% return, and told them that the project was viable. However, the owner of the Alafia property testified that he unequivocally told Shields he would not sell the property, and disavowed authorizing or knowing anything about the tenancy in common agreement, signed by Sims, assigning the Kaanapus an

interest in the Alafia property. A reasonable jury could conclude that Sims made material misrepresentations with the intent to defraud, because he knew that the project was not as he represented it.

Regarding Count 12, the record supports that Sims encouraged the Kaanapus to invest in Stagecoach, and they believed that their investment would be used for the Stagecoach project. Sims admitted at trial that no part of the Kaanapus' Stagecoach investment went to Stagecoach; he arranged for it to be diverted into his company's account, then he spent all the money in about two months to reimburse his company for S3 expenses, including an interest payment to his daughter. Sims further testified that he knew in advance that he was going to spend the money, he did not inform the Kaanapus of his intentions, and he knew he made a mistake. A jury could reasonably conclude that Sims fraudulently solicited the investment for Stagecoach, when he knew that he would divert and almost immediately spend the funds for other purposes.

In each of these appeals, we **AFFIRM** the judgment and conviction of the district court.